State Bank of Blue Island, Appellee, v. Joseph Benzing et al., Appellants.

Gen. No. 41,825.

Heard in the first division of this court for the first district at the October term, 1941.
Opinion filed March 23, 1942. Rehearing denied April 6, 1942.

KLENK & KLEIN, of Chicago, for certain appellants; FRANKLIN W. KLEIN, of Chicago, of counsel.

WARD H. HARRIS, of Chicago, for certain other appellants; WARD H. HARRIS, of Chicago, of counsel.

HUMMER, VAN NESS & YOWELL, of Chicago, W. OTTO WIELGORECKI, of Blue Island, and SCOTT, MACLEISH & FALK, of Chicago, for appellee; JOHN J. YOWELL, of Chicago, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

November 8, 1937, the State Bank of Blue Island brought an action against defendants to enforce a written contract of guaranty executed by defendants whereby they guaranteed the performance by the Blue Island Trust & Savings Bank of a contract entered into between that bank and plaintiff. The case was tried before the court without a jury, there was a finding and judgment in plaintiff's favor for $93,973.87, and defendants appeal.

The case was before us on a former appeal from a judgment holding that plaintiff had failed to state a cause of action in its amended complaint, in that the contract entered into by the two banks was *ultra vires* and void. We reversed the judgment (301 Ill. App. 352) and the case was then heard on its merits. Many of the facts are stated in our former opinion and will not be repeated here.

The Blue Island Trust & Savings Bank was conducting its bank in Blue Island. It was in failing circumstances, complaint having been made by the Auditor of Public Accounts as to some of its business transactions and it was decided to organize a new bank. This was done and plaintiff, the State Bank of Blue Island, assumed the deposit liabilities of the old bank, took over its bankable assets and new money was put into the new bank. The contract entered into between the two banks provided that the new bank might at any time require the old bank to repurchase some of the assets, and defendants entered into a written guarantee that the contract would be carried out. Afterward the old bank was wound up by the Auditor of Public Accounts, who appointed a receiver, and the new bank filed its claim with the receiver. The receiver there contended the claim should not be allowed for the reason that the contract entered into between the two banks was *ultra vires* and void. The matter was referred to a master in chancery who found the contract valid, recommended the allowance of the

claim for $145,310.87 and this was approved by the chancellor December 21, 1936, when a decree was entered.

July 3, 1937, the old bank filed its petition in the liquidation proceeding and sought to have the allowance of the claim vacated. Its petition was dismissed and on appeal to this court the order dismissing the petition was affirmed. We there held the receiver was the only one authorized to represent the old bank (301 Ill. App. 398). Before the receiver was appointed assets were sold to the new bank, of the face value of $1,231,366.32, which as well as those not sold, were being liquidated over a period of years until the face value of the assets held by the new bank had been reduced to $84,811.35. June 22, 1936 the new bank tendered these assets to the receiver of the old bank and requested they be repurchased in accordance with the contract entered into between the two banks. The request was refused and there seems to be no dispute that the receiver did not have the money with which to repurchase such assets. The amount of these assets was included in the claim of $145,310.87 allowed the new bank against the receiver. Afterward the receiver filed his petition in the liquidation suit for leave to sell the $84,811.35 of assets as well as the remaining assets of the old bank and April 7, 1937, an order was entered authorizing and directing the receiver to sell all the assets except cash and money due from banks. Offers were to be filed with the clerk of the circuit court of Cook county where the liquidation suit was pending. The order directed the receiver to publish notice of the time and place of the sale once a week for four successive weeks in two secular newspapers of general circulation published in the City of Blue Island, and once every other week day in the Chicago Daily Tribune "so that any person having any interest in this Receivership Estate may have notice." The provisions of the order were carried out

by the receiver who conducted the sale May 10, 1937, and plaintiff, the new bank, bid $63,500 for the assets offered. The bid was on condition that the amount of the bid be applied so as to reduce plaintiff's claim against the receiver. The court ordered the receiver to accept the bid and to carry out the sale which was accordingly done, and November 6, 1939, a bill of sale was given by the receiver to the new bank transferring such assets of the old bank for the amount of the bid. Other payments were made by the receiver from funds he had collected in administering the winding up of the old bank, credit was given and the claim reduced accordingly.

The record discloses that a written agreement was entered into between the two banks February 27, 1930, whereby the new bank was to assume the deposit liabilities of the old bank, take over certain of its bankable assets above mentioned, etc. It contained a provision that at any time within 6 months from the date of the contract the old bank would ''repurchase for cash or liquid securities any part of the assets which the new bank'' may find are not properly bankable securities. And it was expressly understood that the new bank might from time to time renew or extend the liability of any debtor who was obligated on any of the assets turned over to the new bank and such act would in no wise release or affect the liability of the old bank to repurchase.

By the 5th paragraph of the contract it was agreed that the old bank would, on or before one year, repurchase $29,000 of first mortgage bonds issued by the Hazelwood Cemetery Association for the price of $29,000 and accrued interest, and it was further provided that either party might within the year sell or dispose of the bonds, the amount received to be paid to the new bank. At the same time and as a part of the same contract, defendants, except Joseph Jezisik, since deceased, who were directors of the old bank,

and other directors of the old bank, severally executed a guaranty for the full performance of the contract entered into between the two banks.

October 10, 1930, the two banks executed another agreement by which the time within which the securities might be repurchased by the old bank was extended for a period of 6 months that is until February 27th, 1931. That agreement recited the execution of the first agreement of February 27, 1930, together with the guaranty agreement, above mentioned, and then recited that the new bank, in accordance with the terms of the first agreement, at that time demanded that the old bank repurchase the then remaining assets which had been turned over to the new bank totalling $532,880.33, and that since the old bank "and the above mentioned guarantors are unable to meet in full the demand" of the new bank "they request an extension of time for the completion of said agreement for a period of six (6) months, that is to say, until the 27th day of February, A. D. 1931" and it was therefore agreed that the old bank would repurchase for cash or other liquid securities any or all of such assets during such period. It was further provided that the new bank "agrees to take a promissory note" of the old bank "secured by $29,000 first mortgage bonds of the Hazelwood Cemetery Company, which bonds are part of the assets to be repurchased as shown on page 7 of this extension" the note to be dated August 27, 1930, due on demand and to mature on the date of the expiration of the extension agreement, and it was further agreed that the acceptance of the note should in no way affect or nullify the provisions of the original agreement "and does not release" the old bank "or its guarantors from the fifth provision of the original agreement dated February 27, 1930" whereby the old bank agreed to purchase "these bonds within one year from that date." And "It is hereby specifically agreed and understood that

any stipulations or provision in this Extension Agreement shall in no way affect or nullify any provisions or covenants as set forth in the original agreement dated the 27th day of February, A. D. 1930.''

This contract was signed by the two banks and immediately following, as a part of the same document, was a contract of guaranty signed by all defendants, including defendant Jezisik, and others except defendant Joseph Benzing. It is stated in the guaranty that ''In consideration of the making of the foregoing extension by the State Bank of Blue Island, we, the undersigned, being directors of the Blue Island Trust & Savings Bank, do hereby jointly and severally guarantee the full performance of all the terms and conditions contained on the part of said Blue Island Trust & Savings Bank to be performed, and do further agree that in the liquidation of the assets of said Blue Island Trust & Savings Bank, the funds so received shall be distributed in the following order'': Then follow some specifications, and the guaranty continues: ''It being expressly agreed and understood that the extension shall in no way affect or nullify any provisions in the original contract or our original guaranty.''

Plaintiff's claim of $145,310.87 allowed against the receiver in the liquidation proceeding is made up of two items with interest on each as follows: (1) $84,811.35, being apparently the face value of the securities tendered by plaintiff, the new bank, to the receiver to be repurchased; interest was computed on this amount at 6 per cent from February 27, 1931, to June 22, 1936, making $27,069.62; the second item, $24,792.14, being the balance due on the promissory note of $29,000, above mentioned, on which there was allowed interest at 6 per cent per annum from August 27, 1930, to June 22, 1936, making $8,637.76, so that the two items of interest amount to $35,707.38.

After the allowance of the claim there was a further liquidation of the remaining assets until the principal

amount due was reduced to $34,603.98, and the judgment in the instant case was made up of that item and $59,369.89 interest, or a total of $93,973.87.

Defendants contend the judgment is wrong and should be reversed because plaintiff did not make a demand on the old bank to repurchase the assets prior to the expiration of the first six months, as required by the contract, nor prior to the expiration of the extension agreement. In reply to this contention counsel for plaintiff say (1) that the liability of the old bank "whose performance of its agreement of February 27, 1930 was absolutely and unconditionally guaranteed by the defendants, has been twice adjudicated by this Court," citing *State Bank of Blue Island v. Benzing*, 301 Ill. App. 352 and *Albers v. Blue Island Trust & Savings Bank*, 301 Ill. App. 398. (2) that the contract entered into between the two banks "provided for no demand by plaintiff as a condition precedent to the liability of the Blue Island Trust and Savings Bank." (3) that even if there was such a requirement the evidence shows a demand was made and (4) "The evidence shows that the demand on Blue Island Trust and Savings Bank to repurchase securities for $532,880.33 was in any event useless and in vain."

(1) The liability of defendant guarantors was not adjudicated by us in the two cases cited. In the first case we decided that the contract entered into between the two banks was not *ultra vires* and void and that the allowance of the claim filed with the receiver in the liquidation proceeding where the validity of the contract was squarely raised, was an adjudication of the validity of the contract as between the two banks. In the second case we held that the petition of the old bank filed in the liquidation proceeding, by which it sought to vacate the allowance of the claim, was properly dismissed for the reason that under the stat-

ute the receiver was the proper party and not the old bank.

(2) Did the original contract and the extension agreement entered into between the two banks require plaintiff, the new bank, to demand the old bank to repurchase the securities which the new bank thought were not bankable assets? We think they did. The original contract was entered into February 27, 1930, whereby the old bank sold certain of its bankable assets to the new bank which assumed the deposit liabilities of the old bank. That agreement provided: "The party of the first part [old bank] hereby agrees that at any time within six months from the date hereof it will repurchase for cash or liquid securities any part of the assets shown upon Exhibit A hereto attached which the party of the second part [new bank] may find are not properly bankable securities." And the extension agreement, which the evidence shows was executed October 10, 1930, recites some of the provisions of original agreement, one of which is: "AND, WHEREAS, the party of the second part [new bank] now demands, in accordance with the terms of the above mentioned agreement, that certain assets and securities, totalling $532,880.33 as detailed on pages 4 to 13, inclusive, attached hereto and made a part hereof, be re-purchased by the party of the first part, [old bank] and since the party of the first part [old bank] and the above mentioned guarantors are unable to meet in full the demand of the party of the second part, they request an extension of time for the completion of said agreement for a period of six (6) months, that is to say, until the 27th day of February, A. D. 1931." Under the provisions just quoted from the two contracts we are of opinion that the guarantors would not be liable unless a demand to repurchase certain of the assets was made by the new bank within the six months' period mentioned in the

first contract or the extension period of six months, and that this was plaintiff's construction of the two documents is further shown by plaintiff's complaint in which it is alleged that, in accordance with the terms of the contract "plaintiff demanded that certain of said assets and securities be repurchased." Substantially the same allegation is contained in the complaint in reference to the demand made under the extension agreement. Furthermore, this view is further sustained by plaintiff's written demand made on the receiver June 22, 1936. In that demand it is stated "We hand you herewith and hereby make physical tender of the securities described in the Schedule hereto attached and made a part hereof and demand is hereby made upon you to repurchase from the State Bank of Blue Island each of said securities in accordance with the agreements entered into between the State Bank of Blue Island and the Blue Island Trust and Savings Bank dated February 27, 1930 and in October, 1930, respectively."

(3) Does the evidence show a demand to repurchase the securities? Counsel for plaintiff contend the evidence does show such demand and in support of this say the evidence shows that the list of securities, which plaintiff held were not bankable assets, was made up and a demand made both on the old bank through its officer, Fordtran, and upon the defendants and that this is shown by the testimony of the witness Mayne. They say he testified that prior to February, 1930, he was a bank examiner for the state auditor and examined the old bank and then details what was required to create a new bank, and that after the new bank was organized he became its cashier. On cross examination he testified "On the question whether as cashier of the State Bank of Blue Island I ever made a demand on the Blue Island Trust and Savings Bank to repurchase the assets referred to in the agreements, there was a demand served on the bank to the

best of my recollection on both occasions at the expiration of the original contract and at the expiration of the extension''; that the demand was oral; that ''I made a demand upon the individual guarantors in writing—in that letter of August 27th. I don't remember at this time whether or not a similar written demand was ever made against the bank.'' He further testified several of the directors of the old bank had called upon him relative to the expiration of the original agreement and discussed the possibility of an extension; that when he made the oral demand above referred to, ''I don't think I furnished them definitely with a list at that time, no. I would not say whether or not it was a formal demand, but we had discussed the matter.'' There is in evidence a letter on which it appears that it was ''Mailed 8–27–30.'' It is not addressed to anyone but apparently was signed by the cashier, in which it is said: ''In accordance with the terms of an Agreement entered into on the 27th day of February, 1930 between the Blue Island Trust and Savings Bank and the State Bank of Blue Island in regard to the repurchase of certain assets not formally accepted by the State Bank of Blue Island and on which agreement you are a guarantor, please accept this letter as formal notice that in order to conform with the terms of this agreement the State Bank of Blue Island hereby demands the fulfillment of this repurchase agreement. A list of such assets is on file with the cashier of the State Bank of Blue Island.

''Several of the directors of the Blue Island Trust and Savings Bank have requested a six months' extension of this repurchase agreement, which the State Bank of Blue Island is willing to grant and it was for this purpose that a meeting was called on August 26, at 7 : 30 p.m.

''Due to the fact that there were only a small number present the meeting was adjourned.

"We will appreciate it if you will call the State Bank of Blue Island upon receipt of this letter." This letter was mailed to defendants August 27, 1930, at 4:25 p.m.

We think the evidence was sufficient to show there was a demand to repurchase made before the expiration of the six months' period mentioned in the original contract. The letter of August 27, 1930, shows such a demand was made and that all the guarantors were notified, the letter having been mailed to each of them. Moreover we are of opinion that when the second, or extension agreement was entered into October 10, 1930, the demand required to be made within the six months' period was waived. In the extension agreement it was expressly provided that "any stipulations or provision in this Extension Agreement shall in no way affect or nullify any provisions or covenants as set forth in the original agreement dated the 27th day of February, A. D., 1930."

But we are further of opinion the evidence fails to show a demand to repurchase was made prior to the 27th day of February, 1931, the date of the expiration of the agreement as extended by the second contract. The testimony of Mr. Mayne, on which plaintiff chiefly relies, we think is insufficient. He testified that to the best of his recollection an oral demand was made on the old bank "at the expiration of the original contract and at the expiration of the extension" that he made a demand on the guarantors as shown by the letter of August 27, 1930. It is contended this evidence together with the fact that the letter of February 24, 1931, was sent to the old bank and mailed to the guarantors including defendants, is sufficient. No demand to repurchase is made in the letter of February 24. It advises that the time within which certain assets were to be repurchased, as shown by the extension agreement, would expire February 27, 1931, and the letter then continued, "In the event that

you desire the agreement to be extended it will be fitting to advise the State Bank of Blue Island accordingly.'' We think it clear this was not a demand to repurchase but only suggests that another extension agreement be entered into. We think this is borne out by the fact that afterward, June 22, 1936, when the State Bank made a demand upon the receiver of the old bank to repurchase the assets it presented the receiver with a written demand in which it was expressly stated, ''We hand you herewith and hereby make physical tender of the securities described in the Schedule hereto attached . . . and demand is hereby made upon you to repurchase from the State Bank of Blue Island each of said securities in accordance with the agreements entered into between the State Bank of Blue Island and the Blue Island Trust and Savings Bank dated February 27, 1930 and in October, 1930, respectively.'' No demand having been made to repurchase prior to February 27, 1931, the guarantors cannot be held liable.

(4) As to whether a demand to repurchase ''securities for $532,880.33 was in any event useless and in vain'' as counsel contend, we think under the evidence it cannot be said that a demand would have been unavailing as to these assets or at least as to part of them, because the evidence shows that $30,000 face value of the Liberty Theatre bonds were part of the assets tendered to the receiver for repurchase June 22, 1936, and in 1940 they were called for 102 plus accrued interest, and this sum was paid to plaintiff, the new bank.

We might say we have considered all of the other contentions made by defendants and think none of them can be sustained. Without going into detail we think there is no merit in defendants' contention, that defendants were being sued on the balance due on the $29,000 note, above mentioned, for the reason that defendants did not sign the note but it was signed by

the old bank, because plaintiff's suit is not on the note but on the written guaranty.

As to the contention that defendant, Joseph Benzing, is not liable on the second guaranty because he did not sign it, we think it cannot be sustained because as one of the directors he authorized the execution of the extension agreement and guaranty.

For the failure to make demand to repurchase, as above stated, prior to February 27, 1931, the judgment of the circuit court of Cook county is reversed.

*Judgment reversed.*

McSURELY, P. J., and MATCHETT, J., concur.