(No. 26784.—Judgment affirmed.)
STATE BANK OF BLUE ISLAND, Appellant, *vs.* JOSEPH BENZING *et al.,* Appellees.

*Opinion filed March 16, 1943—Rehearing denied May 13, 1943.*

Wilson, J., dissenting.

Scott, MacLeish & Falk, W. Otto Wielgorecki, and Hummer, Van Ness & Yowell, (John J. Yowell, of counsel,) for appellant.

Klenk & Klein, and Ward H. Harris, (Franklin W. Klein, of counsel,) for appellees.

Mr. Justice Thompson delivered the opinion of the court:

The plaintiff, State Bank of Blue Island, a corporation, filed its amended complaint in the circuit court of Cook county against the defendants, seeking to recover on two written contracts of guaranty. This case has twice been before the Appellate Court. The first appeal was from a judgment below dismissing the amended complaint as not stating a cause of action. This judgment was reversed, the Appellate Court holding the amended complaint sufficient (301 Ill. App. 352) and remanding the cause to the circuit court where it was then tried before the court without a jury and judgment rendered in plaintiff's favor for $93,973.87. Upon appeal the Appellate Court reversed the judgment, (314 Ill. App. 28,) and this court has granted leave to appeal. The facts out of which this controversy arose appear in the allegations of the amended complaint.

It is there alleged that one Joseph Jezisik, deceased, who died October 16, 1936, and all of the defendants, except the executors of said decedent's estate, were at all times mentioned therein, stockholders and directors of the Blue Island Trust & Savings Bank, a State banking corporation, conducting its bank in Blue Island, said stockholders and directors being referred to in the amended

complaint as defendants; that at a meeting of the directors, held on May 31, 1929, attended by all the defendants, a letter was read from the Auditor of Public Accounts calling attention to the fact that said bank had extended credit in excess of its statutory limit, stating the attention of the directors had previously been called to section 10 of the Banking Act and that the Department could not countenance such continued violation of the statute, and making specific reference to loans to two individuals aggregating more than $375,000; that thereafter defendants approved continued and repeated additional violations of section 10 of the Banking Act; that in the early part of January, 1930, such loans exceeded fifteen per cent of the amount of the capital stock of the bank actually paid in and unimpaired, exceeded fifteen per cent of any surplus fund of the bank and exceeded thirty per cent of the amount of capital actually paid in; that the bank was in a failing and perilous condition, financially involved, insolvent, and unable longer to carry on a banking business; that the defendants, in addition to their liability as stockholders, were personally and individually liable in consequence of such violations; that on January 13, 1930, the directors closed the bank and requested the Auditor of Public Accounts to take charge for the purpose of examination and adjustment; that the directors, including defendants, caused the plaintiff bank to be organized for the purpose of taking over certain assets of the closed bank and assuming all of its deposit liabilities; that on February 27, 1930, with the approval of the Auditor and under his supervision, the Blue Island Trust & Savings Bank and the plaintiff bank entered into a contract in writing whereby the plaintiff assumed the deposit liabilities, as shown by the bank records, as of February 28, 1930, such deposit liabilities being in the sum of $1,415,203.92, and took over the assets of the old bank, designated by the defendants as liquid or bankable assets of the face value aggregating $1,231,366.32,

as shown in an itemized schedule attached to and made a part of said contract; that the Auditor of Public Accounts required the old bank and its directors individually, including the defendants, to pay to plaintiff in cash or its equivalent the sum of $183,837.60, so that the face amount of the assets taken over by plaintiff exactly equalled the amount of the obligations assumed by plaintiff; that in order to prevent any loss to plaintiff and to induce it to assume said liabilities and in order to secure the approval of the Auditor, the old bank agreed to repurchase within six months any or all of said securities which plaintiff might find were not bankable securities, and the defendants, in the same instrument, in consideration of the making of the agreement by plaintiff, jointly and severally guaranteed full performance of all the terms and conditions therein contained on the part of the old bank to be performed, and further agreed that in the liquidation of the remaining assets of the old bank all funds received should be retained intact pending the performance of said agreement, except the proper expenses of liquidation of said bank, including attorneys' fees for services leading up to the making of the agreement and delivery of the assets thereunder. Copies of the contract, the guaranty agreement and the itemized list of assets were attached to the amended complaint as exhibits. In the contract, the Blue Island Trust & Savings Bank was designated as party of the first part, and the plaintiff bank as the party of the second part. This contract between the banks set up that "the party of the first part hereby sells, assigns, transfers, conveys, and sets over to the party of the second part all of its liquid assets of every kind and description, including furniture, fixtures and good will shown and specifically listed in Exhibit A hereto attached and made a part hereof." The contract also contained the following paragraphs:

"Fourth: The party of the first part hereby agrees that at any time within six months from the date hereof it will repurchase

for cash or liquid securities any part of the assets shown upon Exhibit A hereto attached which the party of the second part may find are not properly bankable securities, it being hereby expressly understood that the party of the second part may from time to time renew or extend the liability of the debtor on any of said assets, and that such renewal or extension shall in no way release or affect the liability of the party of the first part to repurchase as herein provided.

"Fifth: The party of the first part hereby further agrees that it will on or before one year from the date hereof repurchase Twenty-nine Thousand ($29,000.00) Dollars of first mortgage bonds issued by the Hazelwood Cemetery Association and shown on said Exhibit A for the price of $29,000.00 and accrued interest, it being hereby expressly understood, however, that either of the parties hereto may at any time within said period of one year, sell and dispose of said bonds, and upon any such sale or sales and the payment of the purchase price thereof to the party of the second part the liability of the party of the first part hereunder shall cease and determine to the extent of such sale or sales."

The guaranty agreement attached to said contract was signed by all the defendants except Joseph Jezisik, and is as follows:

"In consideration of the making of the foregoing agreement by the State Bank of Blue Island, we, the undersigned, being directors of the said Blue Island Trust and Savings Bank, do hereby jointly and severally guarantee the full performance of all of the terms and conditions therein contained on the part of said Blue Island Trust and Savings Bank to be performed, and do further agree that in the liquidation of the assets of said Blue Island Trust and Savings Bank remaining in its hands all funds received and paid to said Blue Island Trust and Savings Bank shall be retained intact pending the performance of the agreement, excepting, however, such sums as shall be proper expenses of the liquidation of said Blue Island Trust and Savings Bank, including therein all costs, expenses, attorneys' fees and proper expenses in connection with the collection of said assets and attorneys' fees to be paid to Messrs. Newby and Murphy for their services in all matters leading up to the making of the aforementioned agreement and the delivery of the assets thereunder."

The amended complaint further set up that the contract between the two banks had been duly authorized both by the stockholders and the board of directors of the trust and

savings bank; that thereafter, in accordance with the terms of said contract, plaintiff demanded that certain of said assets and securities be repurchased by the trust and savings bank, but said bank was unable to meet said demand, and it and the defendants requested an extension of time for the completion of said agreement for a period of six months from August 27, 1930, to February 27, 1931; that in accordance with said request and by authority of the board of directors of the Blue Island Trust & Savings Bank, said bank entered into a further agreement in writing with the plaintiff, reciting that demand by plaintiff that certain of said assets and securities be repurchased had been made, that said bank and guarantors were unable to meet the de-mand and requested an extension of time for the perform-ance of their contract, and providing that on or before February 27, 1931, the Blue Island Trust & Savings Bank would repurchase for cash or other liquid securities any or all of the assets totaling $532,880.33, as shown on the schedules thereto attached and made a part thereof. This contract was not dated. A copy was attached to the amended complaint as an exhibit and contained the fol-lowing provisions:

"The party of the second part agrees to take a promissory note of the party of the first part secured by $29,000.00 first mortgage bonds of the Hazelwood Cemetery Company, which bonds are part of the assets to be repurchased as shown on page #7 of this extension. This note is to be dated August 27, A. D. 1930, due on demand and to mature on the date of the expiration of this extension agreement. It is hereby agreed and understood that the acceptance of this note shall in no way affect or nullify the provisions of the original agreement and does not release the party of the first part or its guarantors from the Fifth provision of the original agreement dated February 27, 1930, whereby the party of the first part agreed to repurchase these bonds within one year from that date.

"It is hereby specifically agreed and understood that any stipu-lations or provisions in this extension agreement shall in no way affect or nullify any provisions or covenants as set forth in the original agreement dated the 27th day of February, A. D. 1930."

The amended complaint further sets up that thereupon the note in the contract mentioned was executed by the Blue Island Trust & Savings Bank and delivered to plaintiff; and that the defendants then and there executed and delivered to plaintiff their guaranty in writing whereby they jointly and severally guaranteed full performance of all the terms and conditions contained in said contract on the part of the said Blue Island Trust & Savings Bank to be performed. This guaranty agreement was signed by all of the defendants except Joseph Benzing. A copy of the same was attached as an exhibit to the amended complaint and is as follows:

"In consideration of the making of the foregoing extension by the State Bank of Blue Island, we, the undersigned, being directors of the said Blue Island Trust And Savings Bank, do hereby jointly and severally guarantee the full performance of all the terms and conditions contained on the part of said Blue Island Trust And Savings Bank to be performed, and do further agree that in the liquidation of the assets of said Blue Island Trust And Savings Bank, the funds so received shall be distributed in the following order:

1. To re-purchase any assets as shown on pages #4 to #13, inclusive, attached hereto, and made a part hereof, or for the payment of accrued interest thereon, as the State Bank of Blue Island shall demand from time to time.
2. To pay necessary expenses for the liquidation of said assets.
3. To distribute to the directors such funds as they advanced or loaned to the Blue Island Trust And Savings Bank in accordance with the agreement entered into at the time such advances or loans were made.

It being expressly agreed and understood that the extension shall in no way affect or nullify any provisions of the original contract or our original guarantee."

The amended complaint also alleged that on September 29, 1933, the Auditor of Public Accounts appointed a receiver of said trust and savings bank, and on October 27, 1933, filed dissolution proceedings in the circuit court of Cook county; and that thereafter plaintiff tendered to the receiver certain of the securities and assets taken over by

plaintiff and demanded that the receiver repurchase same and demanded payment by the receiver of the balance of $24,792.14 due on said note. Attached to the demand was a list of the securities tendered totaling $84,811.35 face amount. The receiver, in writing endorsed upon the demand, refused to comply with the request, the refusal being dated June 26, 1933.

The amended complaint further alleges that plaintiff then filed its claim with the receiver in the circuit court; that the receiver resisted the claim on the ground that said agreements were *ultra vires,* but the court entered a decree on December 21, 1936, allowing the claim in the amount of $145,310.87; that thereafter the receiver filed in the circuit court his petition setting up that by virtue of said decree the securities so tendered to the receiver became the property of the receivership estate by operation of law and asking leave to receive offers for the purchase of all of said assets, and on July 7, 1937, the court entered an order granting the prayer of said petition; that no appeal or writ of error was taken or sought either from the decree allowing plaintiff's claim or from the order for the sale of assets and alleges said decrees have become final adjudications of the validity of said contracts and of said claim against the Blue Island Trust & Savings Bank, binding upon said bank and all of its directors, stockholders and creditors. The prayer of the amended complaint was for judgment against the defendants for the amount of said unliquidated assets and the unpaid balance on said note, with interest as therein set out.

The defendants filed motions to strike the amended complaint, setting up, among other grounds, that the contracts between the two banks were *ultra vires* and void. The trial court sustained the motion, and plaintiff electing to stand by its amended complaint, entered a decree on October 27, 1938, striking the amended complaint and dismissing the cause. The Appellate Court on October 3,

1939, reversed this decree, stating in its opinion that the contracts were not *ultra vires* but were valid and binding and that the allowance of plaintiff's claim against the receiver in the liquidation proceedings where the defense of *ultra vires* was interposed by the receiver was *res judicata* as to the validity of the contract and binding on the defendants. The Appellate Court having held that the amended complaint sufficiently stated a cause of action, and remanded the cause, the defendants filed answers. The cause proceeded to trial, resulting in a judgment against the defendants for the amount claimed by plaintiff.

After the plaintiff had taken over all of the liquid assets of the old bank, being all of its assets which were considered good, the old bank still retained assets in the amount of $416,253.48. From the date of the original contract until April 28, 1930, the cashier of the old bank was engaged in liquidating these remaining assets, and occupied a desk on the balcony of the banking quarters. During that time, out of moneys obtained from the liquidation of these remaining assets, more than $33,000 in assets were repurchased by the trust and savings bank at the request of plaintiff. April 28, 1930, all of the assets, books, and papers of the old bank were turned over to the plaintiff and from then on until the appointment of the receiver it acted as the liquidating agent for the old bank of the remaining assets. The plaintiff bank was closed at the time of the moratorium in 1933 and was reorganized and reopened in 1935.

On March 16, 1937, the receiver filed a petition for authority to receive offers for the purchase of all the remaining assets of the defunct bank and two weeks later filed an amendment to such petition to include as assets of the receivership estate the assets which had been tendered to the receiver. April 7, 1937, the court granted the prayer of the receiver's petition as amended, and directed him to receive offers for the purchase of all said assets. In July,

following, the Blue Island Trust & Savings Bank filed its petition in the liquidation proceedings, seeking to have vacated the allowance of plaintiff's claim against the receiver, claiming that the contract between the two banks was *ultra vires*, and that even if it were not, there was no valid or proper demand made by the new bank for the repurchase of the securities as the contract required. This petition was dismissed and the order of dismissal affirmed by the Appellate Court on October 23, 1939, (301 Ill. App. 398,) that court holding that the old bank was not entitled to intervene and contest any claim, that the receiver was the only one authorized to represent the old bank, that the question whether the contracts were *ultra vires* had been litigated and determined in the allowance of the claim and could not be relitigated. On the same day this opinion of the Appellate Court was filed, the receiver filed his report, showing that he had received two offers, one being an offer to purchase a portion of the assets for $500 and the other being the offer of plaintiff to purchase all of the assets for $63,500, conditioned that said purchase price be credited on the amount of its claim allowed against the receiver. On October 26, 1939, the circuit court directed that said assets be sold and transferred to the plaintiff in accordance with its offer. This was done. The receivership was closed, and credit was given for $63,500 upon plaintiff's claim as well as credit for the balance remaining in the receiver's hands which was turned over to plaintiff.

The Appellate Court, in reversing the judgment entered by the trial court in the instant case, did so on the theory that the original contract and the extension agreement entered into between the two banks required the new bank to demand the old bank to repurchase the securities which the new bank thought were not bankable assets, and that as the evidence failed to show such a demand was made prior to February 27, 1931, the date of the expiration of

the agreement as extended by the second contract, the guarantors cannot be held liable.

Plaintiff insists this judgment is erroneous; that it has proved every allegation in the amended complaint which the court had previously adjudged sufficient, that the validity of the original contract and extension agreement entered into between the two banks, and the liability of the Blue Island Trust & Savings Bank thereunder, have been twice adjudicated and that both adjudications are binding upon the defendants. Plaintiff also insists the evidence shows that it made demand upon the trust and savings bank both at the expiration of the original contract and the expiration of the extension and also shows that a demand upon said bank was in any event useless and in vain, that the defendants' guaranties were not conditional, but were absolute primary obligations, and that the defendants, being directors of the trust and savings bank, not only were chargeable with knowledge, but obviously had actual knowledge that their bank would not be able to perform the contract.

Defendants on their part contend that plaintiff is not entitled to recover on the guaranty agreements because the conditions precedent to the fastening of liability on the trust and savings bank were not performed by the plaintiff and also because the two contracts are *ultra vires* and void, that, consequently, the trust and savings bank never became liable to perform, and since a guaranty presupposes liability, in the first instance, of the principal whose performance is guaranteed, the defendants who guaranteed performance by the trust and savings bank cannot be held on their guaranties.

It will be observed that both of the contracts between the banks herein involved were executed prior to November 4, 1930, when the 1929 amendment to section 15 of the Banks and Banking Act became effective. At the time

these contracts were made the statute provided for only one method of voluntary liquidation of a bank which had determined to quit business. That method was to be found in the provisions of section 15 aforesaid. A bank could determine its affairs, distribute its assets among its stockholders, resign its charter or certificate of incorporation and close up its business by depositing with the Auditor of Public Accounts an amount of money equal to the whole amount of debts and demands against it, including expenses of the liquidating proceeding. (*Continental Illinois National Bank and Trust Co.* v. *Peoples Trust and Savings Bank,* 366 Ill. 366.) It is clear that the first contract between the banks in the instant case was designed to terminate the affairs of the trust and savings bank. All of its deposit liabilities were assumed by the plaintiff, and it transferred to the plaintiff all of its liquid assets of every kind and description, including cash, furniture, fixtures, banking quarters and good will. It had no intention of, and had nothing left with which to, ever again resume business as a going bank. All of the assets which were considered good were transferred to the new bank. The only assets retained were the questionable ones. By the eighth paragraph of the contract, the old bank agreed to liquidate such remaining assets with all convenient speed and to surrender and relinquish its permit and charter to the Auditor of Public Accounts. There can be no doubt that this contract contemplated, and was an attempt on the part of the trust and savings bank toward, voluntary liquidation. (*Continental Nat. Bank and Trust Co.* v. *Peoples Trust and Savings Bank,* 366 Ill. 366.) This court has often held that the banking business is so impressed with a public interest that it is subject to strict regulatory legislation. (*Continental Nat. Bank and Trust Co.* v. *Peoples Trust and Savings Bank,* 366 Ill. 366; *People ex rel. Nelson* v. *Wiersema State Bank,* 361 Ill. 75; *Knass* v. *Madison and Kedzie State Bank,* 354 Ill. 554.) This court in the

case of *Knass* v. *Madison and Kedzie Bank,* 354 Ill. 554, on page 561 of the opinion, said: "The rule long recognized and frequently announced by this court is, that a bank incorporated under legislative charter, like other corporations so organized, has only such powers as are expressly conferred by the statute under which it is organized and such powers as are necessarily implied from the specific grant of power. Every power that is not clearly granted is withheld. Enumeration of powers granted implies exclusion of all others, and any ambiguity in the terms of the grant of power must operate against the corporation and in favor of the public. If a power claimed is withheld, the withholding of such power is to be regarded as a prohibition against its exercise." Section 15 of the Banking Act, prior to its amendment in 1929, expressly conferred upon banks the power to voluntarily liquidate in a specified manner. Under the rule above stated this implies the exclusion of power to voluntarily liquidate in any other manner. The power to liquidate in any other manner not being clearly granted, or indeed not being granted at all, is withheld, and such withholding is to be regarded as a prohibition against its exercise. Voluntary liquidation in any other manner than that authorized in express terms by the statute cannot be necessarily implied from the express authority conferred by the statute in regard to voluntary liquidation in a specified method. The amendment of 1929 to section 15 of the banking statute, which became effective by referendum November 4, 1930, amended that section by adding a further and second method of voluntary liquidation. Under the provisions of the amendment, a bank could also voluntarily liquidate by making a contract in writing approved by the Auditor, by which another bank or banking association incorporated under the laws of this State, or of the United States, assumed the whole amount of debts and demands against it. This amendment necessarily either conferred additional power or restricted power

already possessed by banks in regard to voluntary liquidation. If we consider the amendment of 1929 as a restriction upon the powers of banks, then it is a restriction of a power which had never been expressly conferred by the statute under which banks are created and controlled and which had never been given existence by said statute, either expressly or by implication. Banks having only such powers as are conferred, either expressly or by necessary implication, by the statute under which they are organized, as pointed out in the case of *Knass* v. *Mad. and Kedzie Bank,* 354 Ill. 554, we think the better view is that the amendment of 1929 is a grant and not a restriction of power. There being only one method of voluntary liquidation specified by the statute prior to the amendment, at the time the contracts between the two banks in the instant case were entered into, voluntary liquidation in any other manner must be regarded as prohibited by that statute. A contract void because it is prohibited by law can in no manner be enforced. The law does not prohibit and also enforce a contract. (*Knass* v. *Mad. and Kedzie Bank,* 354 Ill. 554; *People* v. *Wiersema Bank,* 361 Ill. 75.) Where a contract is *ultra vires* it is not only voidable but wholly void and of no legal effect and cannot be ratified, nor can performance by the parties give it validity or become the foundation of any right upon it, nor is either party, by assenting to it or by acting upon it, estopped to show it was prohibited. (*People* v. *Wiersema Bank,* 361 Ill. 75; *Steele* v. *Fraternal Tribunes,* 215 Ill. 190.) In the case of *Mercantile Trust Co.* v. *Kastor,* 273 Ill. 332, this court held that if a contract by a corporation is *ultra vires* and void as beyond its power, there can be no action maintained upon it by either party and no recovery against a guarantor of such contract, and that neither the parties to, nor the guarantor of, such unlawful contract are estopped to deny its validity. But although the courts can afford no legal remedy upon a contract which is *ultra vires,* this does

not prevent a recovery where the law can afford a remedy without enforcing the contract and can give relief independently of the contract. Where a contract is *ultra vires* and a corporation has received money under it which in equity and good conscience belongs to another and which it ought to pay over, it is liable for it in an action for money had and received. In such case the action is not maintained upon the unlawful contract nor according to its terms, but on an implied contract to return or make compensation for property or money which it had no right to retain. To maintain such an action is not to affirm but to disaffirm the unlawful contract. (*Mercantile Trust Co.* v. *Kastor,* 273 Ill. 332.) The instant suit is brought, however, not upon any implied contract, but upon the guaranty of an unlawful contract, and this court has definitely held that in such case there can be no recovery. *Mercantile Trust Co.* v. *Kastor,* 273 Ill. 332.

The defendants in the instant suit are not being sued or appearing herein as directors, stockholders or creditors of the Blue Island Trust and Savings Bank, but as guarantors of an unlawful contract of said bank. These guarantors were not parties to, nor represented in, the receivership proceedings in the circuit court resulting in the decree entered by that court December 21, 1936, allowing plaintiff's claim against the receiver. Neither were they parties to, nor represented in, the hearing and proceedings upon the petition filed by the trust and saving bank to vacate the order allowing said claim. In order for a guarantor to be bound by the judgment rendered against his principal, where his contract of guaranty does not obligate him to be responsible for the result of a suit against his principal, he must have had notice of the pendency of the proceedings against his principal and the opportunity to defend. (*Lesczauskis* v. *Downs,* 286 Ill. 281.) It will be observed that the contract of guaranty in the instant case did not obligate the guarantors to be responsible for the result of

any suit. It will further be observed that it does not appear from the record that the guarantors had either notice of, or the opportunity to defend against, the claim of plaintiff allowed in the dissolution proceedings.

Plaintiff calls this court's attention to the decision of the Appellate Court on the former appeal in this case holding that the allowance of plaintiff's claim against the receiver in the liquidation proceedings was *res judicata* as to the validity of the contract involved in this case and binding on the defendants, and plaintiff relies upon this decision of the Appellate Court as authority for its contention that the allowance of plaintiff's claim against the receiver is also *res judicata* as to the performance by plaintiff of all necessary conditions precedent to the fastening of liability on Blue Island Trust and Savings Bank and binding on the defendants. The first decision of the Appellate Court was not final and was not reviewable by this court. While it constituted the law of the case for the circuit court and may have been binding upon the Appellate Court on the second appeal, it is not binding upon this court in reviewing the latter decision. *Frank* v. *Salomon,* 376 Ill. 439; *Stripe* v. *Yager,* 348 Ill. 362; *McLaughlin* v. *Hahn,* 333 Ill. 83.

It is apparent from the facts as developed in this case that everything possible was done by the defendants to save the depositors from loss after it was determined their banking institution was in a failing condition.

This case has presented many difficulties but from a careful analysis of the record we are compelled to conclude that these contracts between the two banks are void and there can be no recovery herein against the defendants upon their guaranties of the unlawful contracts. The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE WILSON, dissenting.