EMPIRE STEEL CORPORATION
OF TEXAS, Appellant,

v.

OMNI STEEL CORPORATION, Appellee.

No. 16514.

Court of Civil Appeals of Texas.

Fort Worth.

April 17, 1964.

Rehearing Denied May 15, 1964.

Martin, Moore & Tackett, Arthur Lee Moore and Elvin E. Tackett, Fort Worth, for appellant.

McGown, Godfrey, Logan & Decker, John W. McMackin and Warren W. Shipman, III, Fort Worth, for appellee.

MASSEY, Chief Justice.

Important identities to be kept in mind to understand the factual background of this case are: Empire Steel Corporation of Texas, hereinafter termed Empire; Omni International Corporation, hereinafter termed Omni International; Westland Steel Products Company, Inc., hereinafter termed Westland; and Omni Steel Corporation, hereinafter termed Omni Steel.

Empire is and was at all material times a financially substantial corporation. Its voting shareholders are Jacob Gachman and his two sons, Dan Gachman and Leon Gachman. At all material times Dan Gachman was the President of Empire.

In 1959 Jacob, Dan and Leon Gachman created Westland, a $1,000 corporation for the purpose of entering into a joint venture with another, or others, for the sale of foreign steel in California. Dan Gachman was at all material times the President of Westland. He, Jacob and Leon own the stock in Westland in the same proportion as they own stock in Empire. Leon Gachman is or was Vice President of both corporations.

About the time Westland was incorporated, Omni Steel was incorporated for $1,000. It was and is a creature of Omni International and its officers and shareholders. It was created for the purpose of entering into a joint venture with Westland for the sale of foreign steel in California. Essentially, the plan of operation of the joint venture called for Omni Steel to keep its products supplied on prem-

ises provided by Westland, ready and available for marketing by Westland, which in turn had the duty of such marketing, with a 50-50 division of profits, if any, and a like responsibility for losses, if any.

As applied to the joint venture of the parties, handled by and under contract as made between Omni Steel and Westland, a great deal of money was involved, and property of considerable value was in the hands of Westland with title thereto in Omni Steel. Each corporation having been incorporated for $1,000, it is readily understandable that each of these corporations wanted to protect itself and its contractual rights as against the other through some arrangement where, in the event of a claim, the liability of the corporation against which the claim was made would not be a mere $1,000 in respect to its capitalization.

The arrangement agreed upon was for Omni International to "guarantee" the obligations of its creature corporation, Omni Steel, to Westland,—and for Empire to "guarantee" the obligations of its creature corporation, Westland, to Omni Steel.

Matters for understanding involve the reciprocal obligations of Omni Steel and Westland under the contract these corporations made with each other, and also involve the reciprocal obligations of Omni International and Empire in the "guarantees" each executed with relation to the responsibility of each for its subsidiary corporation.

We will first endeavor to explain the contract between Omni Steel and Westland, quoting therefrom as might be indicated.

In the contract executed June 16, 1959, Westland agreed to act as the exclusive factor for sale of Omni Steel's certain products, with Omni Steel agreeing that Westland should be such exclusive factor. Omni Steel agreed to supply and Westland agreed to receive and store the products, establish a sales office and furnish sales, clerical help and advertising as required

for the sale thereof. Westland was left free to sell the products at whatever price it desired, except that it should not make any sale resulting in a loss without Omni Steel's written consent. Westland was permitted to deliver title and possession to purchasers, even on terms of certain credit latitude, and accountability resulting therefrom was prescribed. Proceeds from sales, whether by cash or otherwise, were to be kept separate from the funds, etc., of Westland (as its business might consist apart from the joint venture of the parties) and handling and accounting procedure therefor was prescribed. A definition and explanation of what should be meant by "gross profits" from the joint venture was set forth as follows: "As full and complete compensation for your services as Factor in selling the steel products hereunder, you shall be entitled to receive a quarterly commission equal to fifty percent (50%) of the quarterly gross profits derived from said sales; provided, however, that in the event that a gross loss results from said sales, you shall bear fifty percent (50%) of said loss." Provision was made for termination of the contract by Omni Steel in the event of default in any of the agreements or conditions thereon on the part of Westland, with right of Omni Steel to enter upon Westland's premises and take charge of property to which it held title, etc.

In paragraph 19 of the contract it was provided as follows: "Any dispute or controversy between us arising out of or in connection with this agreement shall be determined by arbitration in New York City in accordance with the rules then obtaining of the American Arbitration Association, and judgment upon any award may be entered in any court of competent jurisdiction."

There was a letter amendment of the agreement, dated June 17, 1959, but its provisions have no effect to be noticed in connection with this case.

It is evident from the record that correspondence followed the execution of the

contract of June 16, 1959, in which the Vice President of Omni International stated his desire for Empire's guaranty instrument,—and in one instance set out the form suggested for Empire to use, it being indicated that it was the parties' understanding that Empire's guaranty would be unconditional. The language set out was: "In consideration of the Guarantee by Omni International Corporation of the performance by Omni Steel Corporation of all terms, provisions and conditions of Letter Contract, dated June 16, 1959, * * *."

There was considerable delay in obtaining action by Empire. It is obvious from the record that the Gachmans believed Empire's guaranty should be limited. They also believed there should be some conditions placed upon its liability. In so far as this might be concerned and/or the fact that some conditions actually were provided in the instrument of guaranty, such is immaterial to the questions posed by the appeal. Ultimately, on February 13, 1960, Empire, through its execution and delivery by Dan Gachman, afforded Omni International and Omni Steel a guaranty satisfactory to and accepted by them. There is no question but that Omni International's acceptance was expressed and complete.

The material portions of the guaranty provided as follows: "In consideration of the Guarantee by Omni International Corporation of the performance by Omni Steel Corporation of all terms, provisions and conditions of Letter Contract, dated June 16, 1959, between Westland Steel Products Co., Inc. and Omni Steel Corporation, as amended by Memorandum, dated June 17, 1959, reference to both of which is herein had and made to the same extent and effect as if copied at length herein, Empire Steel Corporation of Texas, a Texas corporation, hereby agrees only as follows:

"1. In the event Westland Steel Products Co., Inc. fails or refuses to pay or cause to be paid to Omni Steel Corporation its share (50%) of the gross losses of the mill depot joint venture operation contemplated and covered by the aforesaid Letter Agreement, * * * Empire Steel Corporation of Texas agrees to pay to Omni Steel Corporation up to, but not more than, Fifty Thousand ($50,000.00) Dollars of such share (50%) of Westland Steel Products Co., Inc. of the gross losses then or at any time so remaining unpaid but otherwise due and payable by Westland Steel Products Co., Inc. to Omni Steel Corporation."

The joint enterprise failed. Omni Steel recovered such part of its property as it could. Under the contract it had with Westland it resorted to arbitration procedure in the State of New York in order to determine the extent of Westland's liability under the contract of June 16, 1959, under the provisions of rules of the American Arbitration Association. The liability of Westland to Omni Steel was, under such procedure, established at $61,360.47. The arbitration decree was entered on December 27, 1961. A judgment thereof was entered in a New York court. No part thereof was recoverable or recovered from Westland. Omni Steel made demand for $50,000 of Empire under its guaranty. Empire failed and refused to pay. Omni Steel then entered its suit in the district court of Tarrant County, Texas to recover said amount, plus interest.

Omni Steel moved for partial summary judgment, objective of which was to establish the fact that Westland's monetary liability to Omni Steel was $61,360.47 dating from December 27, 1961, and, as applied thereto, Empire was obligated to Omni Steel in the sum of $50,000, plus interest thereon from December 27, 1961 (if there was legal liability on its part to Omni Steel under the guaranty instrument of February 13, 1960). The trial court granted the partial summary judgment.

The case on existence of Empire's liability to Omni Steel was begun as a trial before a jury. At the close of the evidence the case was withdrawn from the jury and a judgment was entered in favor of Omni Steel against Empire for $50,000, plus in-

terest from December 27, 1961. From that judgment Empire appealed.

Judgment affirmed.

■ Empire advanced the Statute of Frauds, as a defense to the liability sought to be imposed, in its plea that there was failure of consideration for its guaranty obligation. In that connection we believe that requirements of the Statute of Frauds were satisfied, and, even without any additional memorandum, etc., signed by Omni International, the guaranty instrument in and of itself (in view of Omni International's acceptance aforementioned) became fully qualified as a contract wherein Omni International became obligated within the provisions of the Statute of Frauds. The essential ingredient of "mutuality of remedies" was supplied by Omni International's acceptance. Clegg v. Brannan, 1921, 111 Tex. 367, 234 S.W. 1076; Restatement of the Law, Contracts, § 211, "A Memorandum Signed by Only One Party"; 18 Tex.Dig., "Frauds, Statute of", Anno. ■ "(Signature of Memorandum)—Sufficiency of signature by one party only, in general"; 26 Tex.Jur.2d, p. 259, "Frauds, Statute of", § 98, "The Consideration". The authority last cited primarily relates to real estate transactions where the consideration therefor is itself subject to the Statute of Frauds, but also stands for the proposition (p. 260) that the consideration for a promise to pay another's debt or to answer for another's default or miscarriage need not be shown in writing or evidenced by a memorandum, but may be established by parol, in the event such consideration should not itself fall within the provisions of the Statute.

■ It is to be kept in mind that the consideration in question was a stated one, and that it was required by the Statute of Frauds to qualify as a written obligation of Omni International. We have said that the requirements were fulfilled by acceptance in this instance. Whether this is so is a question of law. 13 Tex.Jur.2d 148, "Contracts", § 29, "(Sufficiency of acceptance)—Determination of sufficiency of acceptance". There was here no question of fact for determination by the jury as a prerequisite to the determination as a matter of law by the trial court that there was a sufficiency of acceptance.

Additionally, we find there is written evidence, uncontradicted, of Omni International's agreement to be bound in respect to the matter of obligation on its part in accordance with the recitation as applied thereto in the guaranty instrument executed by Empire. Therefore, were this a requirement which would be prerequisite to Omni Steel's establishing legality of consideration in respect to any demonstration that there was a "mutuality of remedies" in the reciprocal obligations of Omni International and Empire, we hold that it is established by the record that such requirement was fulfilled.

In our examination of the oral testimony of Dan Gachman, an officer of both Empire and Westland at all material times, endowed with all essential authority in respect to the entire transaction, or to all of the several transactions,—we find nothing contradictory of Omni Steel's factual evidence making out its prima facie case. Were Gachman's testimony viewed as contradictory, it would, of necessity, be treated as having been inserted in the record in violation of the Parol Evidence Rule. It is not to be doubted that Omni International's consideration, stated as the reciprocal guaranty of Omni International, would be a consideration which would be contractual in nature,—a statement creative of some change in legal relations and in particular as creative of a contingent liability on the part of Omni International, —which, when taken into consideration with the written contract between Omni Steel and Westland, clearly appears to have been intended as an all-embracing expression of the transaction. It follows, under the Rule, that proof of further executory consideration was not necessary. Contradictory oral evidence was not admis-

sible to impeach such expression, and if admitted should not be considered to have any weight. Of such character would be Gachman's testimony and even when we tentatively view the same as contradictory of Omni Steel's prima facie case. It therefore would be properly disregarded in any event.

As applied to the case under examination we have at this stage of our inquiry established that there was a valid and binding contractual obligation on the part of Empire under which it owes the duty recited in the guaranty and the contract between Omni Steel and Westland,—unless, as asserted by another group of contentions, the obligation on its part was *ultra vires* as applied to the purposes for which it was incorporated,—and, as beyond the scope of its authority, is unenforceable for such reason.

■ The Texas Business Corporation Act became effective on September 6, 1955. Empire adopted the same, as is by law provided, on September 26, 1957. It was therefore applicable at the time Empire executed the guaranty with which we are here concerned. Art. 2.04, V.A.T.S., "Defense of Ultra Vires", provides in part: "A. Lack of capacity of a corporation shall never be made the basis of any claim or defense at law or in equity. B. No act of a corporation * * * shall be invalid by reason of the fact that such act * * * was beyond the scope of the purpose or purposes of the corporation as expressed in its articles of incorporation * * *." Thereafter, in the body of the section, exceptions are stated,—but as applied to suits against the corporation, other than in certain instances not here applicable, there is no exception.

Empire's counsel argues that the Legislature did not intend that the inhibition of the foregoing sections should have application to guaranties executed by corporations where to do so would be *ultra vires*. We do not pass upon the validity of such contention as applied to anyone bringing a suit against such a corporation on its guaranty other than by a <u>third party</u>, i. e., one who is not a shareholder, but rather one who has entered into contractual relationship with the corporation in good faith and pursuant to commercial activity, and who seeks to recover on the corporation's contractual obligation. As to such a person we hold that the Act inhibits presentation of the defense of *ultra vires*.

From our discussion it is evident that Empire's contractual obligation is valid and enforceable against its *ultra vires* contention. We therefore proceed to the matter of the liability that Omni Steel seeks to establish.

In connection with the New York arbitration proceeding initiated against Westland by Omni Steel, Empire (as well as Westland) was given notice of every step of the proceedings and that Westland's share of the losses would be thereby determined. Empire was given an opportunity to defend. It notified Omni Steel that it elected not to defend. We have heretofore noted that pursuant thereto Westland's share of the losses was determined to be $61,360.47. Omni Steel obtained an arbitration award against Westland for that sum. Pursuant to provision of the joint venture contract a New York judgment was entered upon the award.

As heretofore reported, Omni Steel brought motion in the instant suit for a partial summary judgment by which the court would decree that Empire was bound by the New York determination of Westland's liability to Omni Steel. Motion was sustained and a decree to such effect was entered. This facet of Omni Steel's case against Empire was treated as having been determined at the time the trial was begun before the jury. By points of error on its appeal Empire complains of the propriety of the court's granting the motion, and also of the force and effect thereafter given to such antecedent action.

The effect of the granting of Omni Steel's motion for summary judgment was to relieve it from any burden of proving that Westland had failed to make good losses under the joint venture contract and the fact and amount of such loss as it owed to Omni Steel. Empire contends that it was Omni Steel's burden, never discharged, to make proof that the loss which Empire guaranteed was actually sustained.

It is Empire's contention that since its guaranty was limited to $50,000, that since it did not sign the joint venture of Omni Steel and Westland and was not a party thereto, and that since it furthermore agreed "only" to be liable for a proportion of the gross losses contemplated and covered by the contract of Westland and Omni Steel (remaining unpaid but otherwise due and payable by Westland to Omni Steel), it did not adopt nor become bound and obligated to abide by the result of the arbitration proceedings in New York which, concededly, was binding upon Westland. Stated another way, Empire claims that in the establishment of the amount of its monetary liability Omni Steel necessarily carried the burden of introducing original proof of the gross losses for which Westland was liable to Omni Steel under the contract of those parties.

■ Empire correctly states a rule of law, citing language from North Texas Nat. Bank v. Thompson, 1929 (Tex.Civ. App., Dallas), 23 S.W.2d 494, 498, affirmed by Commission of Appeals, 37 S.W.2d 735, as follows: "* * * the rule of strictissimi juris cannot mean more than this, that where doubt and uncertainty exists as to the meaning of a contract, rendering it susceptible to two interpretations, one favorable to the surety or guarantor, the other unfavorable, the former interpretation will be adopted."

Empire advances the theory that even upon an assumption that the New York proceedings under arbitration would be binding upon a surety as to the issues litigated therein, they would not be binding upon a guarantor, and that since Empire was a guarantor rather than a surety it would not be bound. Empire suggests distinctions between a surety and a guarantor, the primary one being the comment in some decisions that a surety is liable on the same contract as the principal obligor, while a guarantor has made a separate contract.

■ We are of the opinion that the rule governing the effect of a judgment against the principal obligor is applicable in both surety and guaranty cases. There is no distinction to be made between the liability of one properly denominated a surety and one properly denominated a guarantor where the material question is the conclusive effect of a judgment against a principal debtor. Williston on Contracts, Rev.Ed., Vol. 4, pp. 3481, 3484–3485, "Contracts of Suretyship", § 1211, "Suretyship defined"; Corbin on Contracts, Vol. 6A, p. 670, § 1495, "Common Types of Aleatory Commercial Bargains—Suretyship", footnote 57.

■ We believe it must be presumed that by making specific reference in the guaranty instrument to Westland's losses under the contract, which contract contained the arbitration provisions, Empire intended to and did obligate itself that the losses be determined in the manner therein stated. Omni Steel cites language from Walton v. Washington County Hospital Ass'n, 1940 (Ct. of App., Maryland), 13 A.2d 627, 629, as follows: "* * * In the present case the parties considered the eventuality of foreclosure; it is, therefore, logical to presume that they intended to allow the result of foreclosure to determine the amount of liability."

Furthermore, we believe that equity as well as law has application to the instant question. The principal officers and the shareholders of the corporation whose debt was guaranteed and those of the guarantor corporation were the same. It would in our opinion be unconscionable for such persons to approve the arbitration provisions through the offices of the corporation whose

debt was guaranteed and then hold that they were not bound, through the offices of the corporate guarantor, to act upon the provisions upon the occurrence of the contingency guaranteed.

Had the proceedings against Westland, whereby the amount of its liability to Omni Steel was established, occurred pursuant to litigation rather than arbitration, there is no doubt that Empire would have been bound by a judgment therein had it been notified thereof and afforded an opportunity to defend the suit. Latimer v. Texas & N. O. R. Co., 1933 (Tex.Civ.App., Beaumont), 56 S.W.2d 933, error refused. See also 38 C.J.S. Guaranty § 90, Conclusiveness of Adjudication in Prior Action, p. 1262; State Bank of Blue Island v. Benzing, 1943, 383 Ill. 40, 48 N.E.2d 333, 340; Bowditch v. E. T. Slattery Co., 1928, 263 Mass. 496, 161 N.E. 878, 888; Lake County For Use and Benefit of Baxley v. Massachusetts Bonding & Insurance Co., 1935, (CCA 5th), 75 F.2d 6. We hold that Empire is similarly bound under the circumstances existent in this instance.

We believe it necessarily follows, from what we have hereinabove held, that December 27, 1961 was the proper date from which Omni Steel was entitled to have interest computed under the trial court's adjudication of Empire's liability at $50,000, the maximum under its guaranty. Such was the date on which Westland's share of the losses under the joint venture contract was established by arbitration. Interest on an indebtedness created by written contract begins to run when the indebtedness is due and payable. Vernon's Ann. Tex.St., Art. 5070, "Legal rate applicable."

On and after the aforesaid date, December 27, 1961, the amount for which Empire stood responsible under its guaranty was liquidated. The amount due and owing from Westland to Omni Steel was fixed and certain and stood adjudicated as against Westland; and, by reason of Empire's guaranty to the extent of $50,000 (an amount within the total liability of West-

land) stood, under quasi-adjudication, as likewise adjudicated. There was nothing in the nature of a question of the amount of liability, either Westland's or Empire's, which left any latitude for finding, as by the finder of fact, the extent of monetary liability.

The trial court should have removed the case from the consideration of the jury and entered judgment in behalf of Omni Steel and against Empire for the contractual sum of $50,000, plus interest thereon from the date it became due and owing, December 27, 1961. This the trial court did.

Judgment is affirmed.