Linda Sargent, a Minor, by Her Mother and Next Friend, Charlie Belle Sargent, Plaintiff, v. Interstate Bakeries, Inc., a Corporation, and Steve Diklich, Defendants-Counter-Plaintiffs-Appellants, v. David Herskovitz, Defendant-Counter-Defendant-Appellee.

Gen. No. 51,111.

First District, Third Division.

August 11, 1967.

B. F. Martin, of Chicago (F. W. Gulbranson, of counsel), for appellants.

Howard, French and Healy, of Chicago (Russell V. Guilford, of counsel), for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

This is an appeal from an order dismissing a counterclaim (a third-party complaint).

Linda Sargent, a minor, was injured by a motor vehicle while she was crossing a street at an intersection. The vehicle was owned by the defendant Sun Ray Fluorescent Company and was driven by its employee, the defendant David Herskovitz. In count I of a two-count complaint she charged these defendants with seven acts of negligence in the operation of their vehicle.

Count II of the complaint was against the owner and driver of another vehicle: Interstate Bakeries, Inc., and Steve Diklich. She charged these defendants with negligence in parking their vehicle at the crosswalk of the intersection and alleged that this also caused her to be injured.

After the defendants had answered the complaint and denied its allegations, Interstate Bakeries and Diklich (Interstate) filed a counterclaim for indemnity against the Sun Ray Company and Herskovitz (Herskovitz), alleging that their own negligence was passive while that

188

of Herskovitz was active and was the proximate cause of the plaintiff's injuries. Herskovitz moved to dismiss on the ground that under the plaintiff's complaint Interstate could only be guilty of active acts of negligence and that contribution between tortfeasors is not allowed in the State of Illinois. The motion was granted and Interstate appealed—the trial court having found that there was no just cause to delay appeal from its ruling.

The appellant relies upon the case of Reynolds v. Illinois Bell Tel. Co., 51 Ill App2d 334, 201 NE2d 322 (1964). Outside of some small procedural differences the Reynolds case is identical with the case at bar. A minor was injured in a crosswalk by a passing motorist. A truck owned by Illinois Bell was parked near the crosswalk. The minor sued Illinois Bell (a covenant not to sue had been entered into with the motorist) alleging that its negligence in parking caused her injuries. Illinois Bell sought indemnifying protection from the motorist. The trial court dismissed Illinois Bell's third-party complaint. The Appellate Court reversed. The court held that the complaint stated a cause of action for indemnity and that it should not have been dismissed without a trial on the merits of the question whether the motorist was the primary delinquent compared with Illinois Bell's parking violation.

The appellee, Herskovitz, attacked the Reynolds decision in the trial court and criticizes it vehemently in this court as going beyond all the recognized theories under which Illinois courts have permitted indemnification and as approving, under the guise of indemnity, contribution among pari delicto tortfeasors.

The trial judge refused to follow Reynolds. His position was candidly expressed in a companion case wherein Reynolds was also cited: "It is my view that the decision in Reynolds is basically wrong and contrary to our previous guideposts. . . ." The judge gave his reasons for not following Reynolds, among them being that it

unnecessarily expanded, beyond any true indemnity situation, the concept of comparative negligence between defendants and constituted a long step towards involuntary contribution between joint tortfeasors.

It is argued on appeal that Reynolds is not a correct exposition of the Illinois law concerning common-law indemnification; that indemnification is only allowed where one does the act which produces the injury and the other does not join in the act but is exposed to liability; that the cases cited in the Reynolds opinion fall within this principle but the factual situation in Reynolds does not. It is further argued that if Reynolds is followed a negligent defendant may be completely relieved of liability if he can find a defendant who was more negligent than himself, and that it will encourage the filing of third-party complaints in attempts to shift the entire burden from one defendant to another.

■ It is true that the Reynolds decision did add a further dimension to the right of one negligent tortfeasor to recover indemnity from another. Generally, recovery had theretofore been allowed only in cases where the liability of the defendant seeking indemnity was derived from the defendant from whom indemnity was sought and the defendants had some community of interest in their relationship to the plaintiff which antedated the liability-creating incident. See Spivack v. Hara, 69 Ill App 2d 22, 216 NE2d 173 (1966). Under one analysis of Illinois cases, a pretort relationship between negligent tortfeasors provides a necessary substratum for implying an agreement that the one tortfeasor would perform the duties imposed by the relationship without subjecting the other to liability. Comment: Contribution and Indemnity in Illinois Negligence Cases, 19 U Chi L Rev 388, 397 (1952). However, the right to indemnity stands upon the principle that everyone is responsible for the consequences of his own acts, Bituminous Cas. Corp. v. American Fidelity & Casualty Co., 22 Ill App2d 26, 159

NE2d 7 (1959) ; Prosser, Torts, 15 (2d ed 1955) ; Holmes, The Common Law, 108–110, 144–146 (1881). Thus, the absence of a prior legal relation should not foreclose relief to a tortfeasor not in pari delicto with his codefendant. Although the existence of such a relationship may tend to establish that the liability of the potential indemnitee is solely derivative, it does not prove that he was not an active cause of the plaintiff's injuries, e. g., Yankey v. Bohling, 37 Ill App2d 457, 186 NE2d 57 (1962). Nor does absence of a specific relationship necessarily prove that the codefendants were in pari delicto and thereby preclude indemnity, e. g., McDonald v. Village of Lockport, 28 Ill App 157 (1888). Implicit in the Reynolds decision is the recognition that a joint tortfeasor might be blameless in comparison with a codefendant with whom he had no pretort relation and that lack of this community of interest is not of itself a bar to indemnification.

This same principle was expressed by the court in Parrish v. DeRemer, 117 Colo 256, 187 P2d 597 (1947). In that case the defendant was a construction company engaged in building a road across a well-travelled highway. The defendant barricaded the highway at its intersection with the road and directed vehicles travelling either way on the highway to pass the barricade on an unfinished portion of the construction project. This detour was too narrow for vehicles to pass abreast but no warning to that effect was posted. The plaintiff's truck in using the detour collided with an automobile. The occupants of the automobile recovered a judgment from the plaintiff, and he sought indemnification from the defendant. The trial court's grant of summary judgment for the defendant was reversed by the Supreme Court. That court said:

"[W]hile there is a general rule which precludes one wrongdoer from recovering indemnity from another wrongdoer, there is an exception thereto which

permits a party who is in fault as to the person injured but who is without fault as to the party whose actual negligence is the cause of the injury to recover indemnity."

It should be noted that Colorado law does not permit contribution from a joint tortfeasor. Publix Cab Co. v. Fessler, 138 Colo 547, 335 P2d 865 (1959).

In addition to disregarding the lack of community of interest between the joint tortfeasors, the Reynolds decision also departed from the standards previously used to measure the disparity in degree of fault necessary to constitute a cause of action for indemnity. The alleged negligence of Illinois Bell in parking its truck furnished a condition upon which the motorist operated. The subsequent independent act of the motorist caused the plaintiff's injury. In holding that under these circumstances Illinois Bell's negligence was passive and that of the motorist active, Reynolds reached the same conclusion as did the court in Southwestern Greyhound Lines v. Crown Coach Co., 178 F2d 628 (8th Cir, 1949). Greyhound operated a bus station and Crown Coach used the station to load and unload its passengers. A passenger of Crown Coach, after disembarking from one of its buses, fell over a piece of luggage and was injured. She sued Crown Coach and won and Crown thereupon sued Greyhound. Each bus company contended that its negligence, if any, was passive and the other's active. The court held that the negligence of both Greyhound and Crown Coach was passive; that the party guilty of active negligence was the unknown person who placed his luggage on the floor near where passengers had to alight. The court found that the companies' passive negligence furnished the occasion for the passenger's accident and stated:

"Passive negligence exists where one person negligently brings about a condition or an occasion and

active negligence exists where another party negligently acts upon that condition and perpetrates a wrong."

A similar explanation of the difference between active and passive negligence was given in King v. Timber Structures, Inc. of California, 240 Cal App2d 178, 49 Cal Rptr 414 (1966), an action for indemnity by a general contractor against a subcontractor. The court there stated:

". . . one is passively negligent if he merely fails to act in fulfillment of a duty of care which the law imposes on him. . . . One is actively negligent if he participates in some manner in the conduct or omission which caused the injury."

The strict rule prohibiting contribution which the appellee advocates and the trial court applied is a modification of the one first pronounced in Merryweather v. Nixan, 8 Durn & East 186, 101 Eng Rep 1337 (1799). The original rule was applied to those who acted in concert and whose torts were intentional. However, the rule's prohibition was subsequently extended in some jurisdictions, Illinois among them, to those whose torts were merely negligent. In the early case of Nelson v. Cook, 17 Ill 443 (1856), the flat statement was made that:

". . . the principle laid down in Merryweather v. Nixan . . . that there is no right of contribution as between tortfeasors, or trespassers, has been, and still is, recognized as unquestionable law."

An examination of the cases in which Illinois courts of review have discussed this general rule against contribution indicates that its vitality is derived more from judicial iteration of its existence than from its being applied in a consistent and unequivocal manner. The cases under analysis fall into two main classes, those

which repeat the rule in its extended scope and those which, setting limitations to the broad formulation of the rule, revert to its pristine version.

The first class of cases includes suits for indemnity. In some of these cases the statement of the rule is dictum. E. g., Nelson v. Cook, supra, and the early Appellate Court case of Rend v. Chicago West Division Ry. Co., 8 Ill App 517 (1881). In others the courts have treated the right to indemnification as an exception to the rule against contribution and have stated that in the various circumstances the rule did not apply to bar recovery. E. g., Grimes v. Taylor, 93 Ill App 494 (1901); Blazak v. Union Tank Car Co., 37 Ill App2d 12, 184 NE2d 808 (1962); Embree v. Gormley, 49 Ill App2d 85, 199 NE2d 250 (1964). Another group of cases within the first classification is comprised of those wherein the right to contribution was not in issue but was considered in relation to the main point for decision. For example, the court in Johnson v. Chicago & Pacific Elevator Co., 105 Ill 462 (1882), said without qualification that "there is no right of contribution between wrongdoers." Johnson was the owner of a boat which ran into the plaintiff's grain elevator. A writ of attachment was issued against the boat, and the attachment was later released when Johnson posted a bond. J. B. Carter, claiming to be part owner of the boat, then sought leave to be made a defendant. His petition was denied and the Supreme Court affirmed. The court stated that the bond released the boat to its owners and that Carter therefore could not be affected by the result of the suit since only the obligors on the bond would be required to pay the judgment. It was in response to Carter's claim that he was interested in the suit because he would be liable to contribute to the judgment that the court denied any right of contribution. The court cited no authority for its pronouncement. Apart from whether or not there was a right to contribution, the denial of intervention was

194

proper since a plaintiff has the right to sue any one or more joint tortfeasors. (Grewenig v. American Baking Co., 293 Ill App 604, 13 NE2d 183 (1938).) Other cases illustrative of this group are: Consolidated Ice Machine Co. v. Keifer, 134 Ill 481 (1890); Vieths v. Skinner, 47 Ill App 325 (1893); Consolidated Fireworks Co. v. Koehl, 92 Ill App 8 (1900); Aldridge v. Morris, 337 Ill App 369, 86 NE2d 143 (1949); Dart Transit Co., Inc. v. Wiggins, 1 Ill App2d 126, 117 NE2d 314 (1953).

In the second class of cases are statements of the rule which are in accord with its original expression in Merryweather v. Nixan, supra. In some of the cases the discussion of the rule was in support of the decision on the main issue. The decision in Skala v. Lehon, 343 Ill 602, 175 NE 832 (1931), depended upon whether a joint action could be maintained against a master and servant where the master's liability was based on the doctrine of respondeat superior. In answering an objection raised against joinder, the court said that as a general rule the right of contribution does not exist as between joint tortfeasors when there is concerted action in the commission of the wrong; but where there is no concerted action the rule does not apply for the parties in such a case are not in pari delicto as to each other, and as between themselves their rights may be adjusted in accordance with the principles of law applicable to the relation in fact existing between them. Cf. Wallach v. Billings, 195 Ill App 605 (1915). Other cases within this classification include suits for contribution from joint tortfeasors. In Farwell v. Becker, 129 Ill 261 (1889), the Supreme Court acknowledged that some cases held there was no right of contribution between wrongdoers but thought that the weight of authority did not sustain so broad a statement of the rule. It stated that if attaching creditors acted in good faith, with prudence, caution and the honest belief they were legally entitled to seize the goods, the right of contribution exists al-

though it ultimately turned out that the seizure was unlawful. Accord, Selz, Schwab & Co. v. Guthman, 62 Ill App 624 (1896). In Goldsborough v. Darst, 9 Ill App 205 (1881), contribution was allowed between two persons who committed a tort intentionally and knowingly, fraudulently attempting to deprive a third person of a parcel of land. In Wanack v. Michels, 215 Ill 87 (1905), the surety of a dramshop operator sought to compel the lessor of the premises to contribute to a judgment rendered against the operator and the lessor under the Dram Shop Act. The court stated that it is a general rule that there is no right of contribution as between tortfeasors; it added, however, that this rule is applied only to cases of intentional and conscious wrongdoing. Contribution was denied because the lessor and the operator for whom the plaintiff was surety were both intentional wrongdoers. A further division of this class is represented by McDonald v. Trumpf, 49 Ill App2d 106, 198 NE2d 537 (1964), a suit for contribution between negligent tortfeasors. In this case a motorist claimed a right to contribution from the operators of a tavern. The motorist while intoxicated had injured the plaintiff and the judgment which the latter obtained against him and the tavern keepers was sought to be enforced against the motorist and his insurer alone. The court stated that the rule of no contribution among tortfeasors applied only when they had acted concertedly and intentionally, and that in other cases recovery may be allowed to the passive tortfeasor whether or not the joint tortfeasors had a prior contractual relation. Recovery was denied because the motorist was an active tortfeasor.

The decisions in the last class of cases where the question of a right to contribution was squarely presented would tend to support a conclusion that the law does permit contribution between negligent tortfeasors. However, repetition of the general rule in other cases has played a part in its retention and it is still the law

of Illinois. Chicago & Illinois Midland Ry. v. Evans Const. Co., 32 Ill2d 600, 208 NE2d 573 (1965); Miller v. DeWitt, 37 Ill2d 273, 226 NE2d 630 (1967).

To alleviate the harsh results that would be caused by the uniform refusal to allow contribution, the courts of Illinois have developed indemnification as an exception to the rule. Palier v. Dreis & Krump Mfg. Co., 81 Ill App2d 1, 225 NE2d 67 (1967); Spivack v. Hara, 69 Ill App2d 22, 216 NE2d 173 (1966). At common law the cases in which indemnity was allowed involved a defendant held liable without personal fault, typically master-servant cases and cases where the defendant was subject to a nondelegable duty. Due to the restrictions on the right to contribution, indemnity was expanded to allow recovery to a party not completely free of fault. (See the exceptions listed in Gulf, M. & O. R. Co. v. Dixon, 343 Ill App 148, 98 NE2d 783 (1951)). Our courts now permit one tortfeasor to recover from another if there is a qualitative distinction between the negligence of the two. As it is commonly stated, a passively negligent tortfeasor may obtain indemnification from an actively negligent tortfeasor.

Although the strict rule of noncontribution has been modified as the needs of the times compelled or as justice in the case at hand required, the active-passive exception has been applied in an ad hoc fashion and there is a lack of uniformity in the results. The Illinois judiciary is keenly aware of the inequities flowing from the present rule, and the perplexities which have arisen from the indemnity exception, and has recommended the rule's abolition. The Illinois Judicial Conference of 1964 unanimously adopted a resolution favoring contribution between joint tortfeasors. The legislature has not acted upon the conference recommendation and the rule remains in force. However, the rule was court-made and can be court-changed. Molitor v. Kaneland Community Unit Dist., 18 Ill2d 11, 163 NE2d 89 (1959).

If the rule is not abrogated it must be further relaxed. There cannot be rigid compliance with the rule without continuing injustices. Indemnity should not be limited to situations where there is derivative liability upon the third-party plaintiff by reason of operation of law, or where there has been a preaccident relationship with the third-party defendant. The law must be attuned to social developments and degrees of fault must be recognized which will permit indemnification from tortfeasors substantially at fault to those less blameworthy. Although Reynolds may, as the trial court thought, constitute a step toward involuntary contribution between joint tortfeasors, we do not find this result disturbing. As we observed in Moroni v. Intrusion-Prepakt, Inc., 24 Ill App2d 534, 165 NE2d 346 (1960) :

> "The principle of no contribution and no indemnity between all joint tort-feasors is more a rule of ethics than a principle of law. The law simply closed its door to the inter se disputes of those whom it considered to be bad men. This originated at a time when torts were in the main such wrongs as slander, libel, and assault and battery. Today, torts are mainly the incidents of industry and transportation. To continue to apply the rule to such cases . . . would make the law no jealous mistress, but a squeamish damsel, refusing to have anything to do with a couple of respectable suitors because her grandfather once told her they were joint tort-feasors."

■■ In the case at bar the difference between the conduct of Interstate and Herskovitz could be substantial. It does not necessarily follow that because the plaintiff's complaint makes little qualitative distinction in their negligence that there can be no such distinction. To start with, the plaintiff's complaint alleged that Interstate parked its vehicle negligently and illegally. Interstate

denied this in its answer and in its counterclaim stated that its vehicle was lawfully parked. Herskovitz' motion to dismiss presupposes that Interstate will be able to prove the allegations in its counterclaim including the one that its vehicle was lawfully parked. To go on, negligent parking could be of many forms: double parking; parking at an angle to the curb if the parking should have been parallel; parking parallel to the curb if the parking should have been at an angle; parking too far from the curb; parking in a no-parking zone; parking into the crosswalk or too close to it. The position of the parked vehicle was not described. The plaintiff's complaint merely said that it was parked in a "dangerous space," that it obstructed the view of other vehicles and endangered pedestrians on the crosswalk. The negligence alleged against the operating vehicle, on the other hand, was many-sided: excessive speed, careless operation, failure to keep a proper lookout, failure to give warning, failure to apply brakes and failure to keep the vehicle under control. The circumstances of the accident could vary the culpability of the tortfeasors. If, for example, the evidence should show that Interstate's vehicle was against the curb and parallel to it but a little too close to the crosswalk, and that the Herskovitz vehicle was being driven recklessly at an excessive speed and plowed into the crosswalk crowded with pedestrians, whose negligence would be more substantial? On the other side of the coin, if the evidence should show that the Interstate vehicle was double-parked well into the crosswalk so that the vision of both pedestrians and approaching drivers was obscured, and that the Herskovitz vehicle was proceeding at a reasonable speed and under control but that its brakes were not applied in time to prevent striking the lone child only because the illegally parked vehicle delayed the driver in seeing her as she darted around the parked vehicle, whose negligence would be more flagrant?

199

Of course, a third-party complaint may be dismissed if it fails to state a cause of action. But motions to dismiss such complaints before evidence is heard must be examined with circumspection. Pleadings do not always reveal with certainty the relative degrees of negligence of either the third-party plaintiff or defendant. Allegations of negligence in either the original or the third-party complaint may not be substantiated, some may be withdrawn, others may be added to conform to proof; factual questions may be raised by conflicting testimony or disputed evidence. In many of these cases it is only after evidence has been heard that a court can decide with reasonable accuracy whether a third-party complaint should be dismissed or the issues passed upon by the jury.

The problem facing a trial court is illustrated by the case of Miller v. DeWitt, 37 Ill2d 273, 226 NE2d 630 (1967). In Miller the complaint charged a general contractor who was remodeling a building and the architects who had drawn the plans for the remodeling with common-law negligence and a violation of the Structural Work Act. The architects filed a third-party complaint requesting indemnity from the contractor. The latter moved to dismiss on the principal ground that the plaintiffs' complaint charged the architects with active negligence and that one so charged was not entitled to indemnity from another tortfeasor. The trial court sustained the motion, the case went to trial and a verdict was returned against the architects. They appealed from the judgment and from the court's dismissal of their third-party complaint. The Appellate Court (59 Ill App2d 38, 208 NE2d 249 (1965)) affirmed the judgment and the dismissal. The Appellate Court rejected the architects' contentions that the trial court should not have dismissed their complaint before the evidence was heard, and that a third-party complaint need not show with certainty the right to recover but is sufficient if it shows the possibility

of liability on the part of the third-party defendant. Leave to appeal was granted. The Supreme Court affirmed the judgment but reversed the order dismissing the third-party complaint. The court said, ". . . while Illinois does not allow contribution among joint tortfeasors, it does allow a passively negligent tortfeasor to obtain indemnification from an actively negligent tortfeasor." The court observed that, although the original complaint charged active wrongdoing on the part of the architects, the trial court should not have dismissed the third-party complaint unless it appeared from the pleadings that *in no event* would the architects have an action against the contractor.

■ ■ So too in the present case. Although, according to the plaintiff's complaint, the negligence of both defendants was concurrent and, although it can be argued that the negligence charged against them was of the same quality and character, this does not necessarily make Interstate's counterclaim insufficient in law. A jury might well find that the plaintiff's injuries were caused by Herskovitz and he was the active tortfeasor while Interstate's fault was only passive. The defendants were not acting in concert; the alleged negligence of each was unintentional and independent of each other. On the face of the pleadings there was the distinct possibility that a jury could find that there was a much greater degree of culpability on the part of Herskovitz whose vehicle struck the plaintiff than on the part of Interstate whose parked vehicle merely furnished a condition which may have contributed slightly to the accident. This would be sufficient to warrant placing upon the former a burden commensurate with his fault. Under these circumstances the motion to dismiss the counterclaim should have been denied.

Total indemnity may appear unjust if the evidence discloses that interstate was in some measure to blame for the accident, but it would be much more unjust to compel

Interstate to assume the burden of the tortfeasor who was chiefly at fault. The possibility of inequity is unavoidable until the rule against contribution yields to a more rational approach which will place upon each tortfeasor liability in proportion to his own culpability.

The order dismissing the counterclaim is reversed and the case is remanded to the Circuit Court.

Reversed and remanded.

SULLIVAN, P. J. and SCHWARTZ, J., concur.