484 F.2d 767
 Janice PARR, Individually and as Administrator of the Estate
of David W. Parr, Deceased, Plaintiff,
v.
GREAT LAKES EXPRESS COMPANY, a foreign corporation,
Defendant and Third-Party Plaintiff-Appellant,
v.
CHICAGO WESLEY MEMORIAL HOSPITAL, an Illinois not-for-profit
corporation and Robert Thonney, Third Party
Defendants-Appellees.
 Nos. 72-1011 and 72-1759.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 23, 1973.
Decided July 16, 1973.
Rehearing Denied Aug. 7, 1973.
 
 Michael E. Dowd, Philip J. McGuire, Chicago, Ill., for appellant.
 John M. Moelmann, D. Kendall Griffith, Chicago, Ill., for appellees.
 Before KILEY, FAIRCHILD and PELL, Circuit Judges.
 PELL, Circuit Judge.
 
 
 1
 This is an appeal from the dismissal of a third-party complaint by Great Lakes Express Company in which it sought judgment against Chicago Wesley Memorial Hospital and its employee Robert Thonney. The substantive aspect of the case revolves around the active-passive negligence indemnity law of the State of Illinois.
 
 
 2
 Initially there was raised in No. 72-1011 a question of the propriety of the appeal dependent upon whether the order of dismissal created appealable finality under Rule 54(b), Fed.R.Civ.P. Prior to the hearing in this court, the original action from which the third-party complaint developed was settled, leaving the status of the litigation in the district court as unarguably final. We do not find it necessary to decide the appealability question raised in No. 72-1011 as the appeal is properly here in any event and the two appeals have been consolidated for consideration and decision.
 
 
 3
 The original suit below had sought damages from Great Lakes on the basis that plaintiff's decedent had died as the result of being hit by a truck operated by an employee of Great Lakes. Parr, the decedent, had been at the time an employee of Wesley Memorial and we assume that his Administrator would have been confined to workmen's compensation relief only insofar as the Hospital or a fellow employee was concerned.
 
 
 4
 The dismissed third-party complaint is in two counts. The first count proceeds on the theory that certain specifically alleged acts of negligence on the part of Wesley Memorial, acting through its employee, were the sole and proximate cause of Parr's death. We do not understand the function or purpose of this count. If the accident was solely and proximately caused by someone else's negligence this would seem to be a complete defense to the original action and would not seem to be the basis of a third-party action, which presupposes liability on the part of the original defendant which he is attempting to pass on to the third-party defendant. Although Count I does reflect by its specific allegations the type of proof which presumably Great Lakes would have proffered in support of Count II, which asserted the active-passive negligence distinction, we must conclude that it was properly dismissed.
 
 
 5
 Count II, including the allegations incorporated by reference from Count I, insofar as material here alleges the following. Wesley Memorial had leased a truck for delivery which had been parked on a Chicago street by Thonney. At the time of the accident, the Great Lakes driver allegedly "was in the process of backing [a Great Lakes truck] under the direction, supervision and control of Third-Party Defendant, Robert Thonney, in an easterly direction, to come up to and connect with the vehicle leased by [Wesley Memorial]." The specific acts of negligence charged in Count I against the Hospital and Thonney, for some reason, are not incorporated by reference in Count II. The third-party complaint further alleges that any negligence established in the Parr action against Great Lakes would be passive or secondary whereas primary or active acts of negligence would be established against the Hospital and Thonney.
 
 
 6
 Although Count II could never be said to be a candidate for any book of model pleadings, we must examine it in the context in which we find it, i. e., as having been dismissed before trial by the district court. That court simply granted the motion to dismiss without specifying the reasons therefor. However, it appears fair to conclude that the court dismissed the third-party complaint on the basis that it failed to state a claim upon which relief could be granted, pursuant to Rule 12(b), Fed.R. Civ.P. We need not determine whether federal or state law is applicable to this particular phase of the matter[1] as there is substantial accord between the two on the appropriate treatment. The complaint must be construed liberally, with all factual allegations deemed to be true and with doubts to be resolved in favor of the pleader. Jung v. K. & D. Mining Co., 260 F.2d 607, 608 (7th Cir. 1958). Dismissal is not favored unless it appears that in no event would the pleader be able to prove an actionable claim. Miller v. DeWitt, 37 Ill.2d 273, 287-288, 226 N.E.2d 630, 640 (1967).
 
 Illinois Law
 
 7
 For at least a century, Illinois courts have repeatedly stated that contribution between joint tortfeasors is not allowed. See, e. g., Miller v. DeWitt, supra at 289, 226 N.E.2d at 641; Nelson v. Cook, 17 Ill. 443 (1856). However, possibly to alleviate the harsh results visited upon a secondarily liable party by this prohibition, the courts have evolved certain doctrines, notably, the concept of implied indemnity or "active" versus "passive" negligence, in which an indemnitor, through his active or primary negligence, creates legal liability for the indemnitee, who is only passively or secondarily liable. If a party can prove himself to have been merely "passively" negligent, he can shift the entire burden for the commission of the tort to the "active" tortfeasor.[2]
 
 
 8
 Not surprisingly, because the concepts of "active negligence" and "passive negligence" are imprecise and are difficult to apply to a given factual situation, the case law provides uncertain guidance.[3] However, one recent decision cited by Great Lakes, Carver v. Grossman, 6 Ill. App.3d 265, 285 N.E.2d 468 (1972), appeal pending in the Illinois Supreme Court, is factually similar to the case before us and thus is helpful here.
 
 
 9
 In Carver, the original plaintiff was an employee at a service station and was working in front of a customer's car. The hood of the car was up and, apparently at the direction of Bishop, the station operator, the customer entered the car and started the motor while the car was in gear. The car moved forward, severely injuring the plaintiff, Carver. Carver sued Grossman, the administrator of the customer's estate, and the administrator then filed a third-party action against Bishop. After a bench trial on the third-party action (the original action was settled), the trial court held that third-party defendant Bishop had been guilty of active and primary negligence while the deceased customer had been guilty only of passive negligence. The Appellate Court affirmed and pointed out that Bishop controlled the entire operation of the service station; he had placed the automobile in the service stall; he had left the key in the ignition with the car in gear; he had failed to put blocks in front of the vehicle's wheels; and, most importantly, Bishop had instructed the customer to put the car into motion. Thus, Bishop's wrongful conduct, characterized as "active," was primarily in giving a verbal direction to another person and also in failing to take certain safety precautions.
 
 
 10
 In addition to the difficulties inherent in the active-passive concept, the decisional law also seems unclear as to whether all "passive" tortfeasors may recover over or whether only some may. Under one view of the cases, until the opinion in Reynolds v. Illinois Bell Telephone Co., 51 Ill.App.2d 334, 201 N.E.2d 322 (1964), Illinois courts allowed recovery only where the indemnitee's liability had been derived from the indemnitor and the parties had had some legal relationship prior to the occurrence of the liability-creating incident. However, in Reynolds, despite the absence of a preexisting legal relationship between the parties, the court held that the third-party complaint stated a cause of action for indemnity and that the third-party plaintiff was entitled to a trial on the merits to determine the nature of the respective parties' negligence. A 1967 decision, Sargent v. Interstate Bakeries, Inc., 86 Ill.App.2d 187, 229 N.E.2d 769 (1967), discussed and reaffirmed Reynolds. And then, in 1968, the Illinois Supreme Court spoke to the issue, Muhlbauer v. Kruzel, 39 Ill.2d 226, 234 N.E. 2d 790 (1968). The parties, however, are not in agreement as to the impact of that case on the case before us.
 
 
 11
 The Hospital and Thonney read Muhlbauer as rejecting the Reynolds-Sargent liberalized view of implied indemnity. The third-party defendants urge that the Illinois Supreme Court in Muhlbauer emphasized and narrowed the "pre-existing relationship" requirement. Under their interpretation, Illinois has, in effect, retreated to the position that only those "passive" tortfeasors who incurred liability because of duties and relationships created by, for example, the respondeat superior doctrine or the Illinois Structural Work Act may successfully sue under the implied indemnity theory. Their primary criticism of Great Lakes's complaint and their primary argument for our affirming the district court's dismissal is that Great Lakes failed to allege such a pre-existing relationship.
 
 
 12
 We think that the third-party defendants read too much into Muhlbauer. In that case, the original plaintiff sued Kruzel, the operator of a food market, alleging, inter alia, that Kruzel had arranged for a clown to stand along the sidewalk in front of the defendant's store for the purpose of promoting Kruzel's business. Plaintiff further charged Kruzel with acts of negligence in the arrangement; allegedly as a result of such negligent acts, plaintiff was knocked down and injured. Kruzel denied that he had hired or caused the clown to be there or that the clown was doing anything to promote Kruzel's business or any product sold therein. Kruzel filed a third-party complaint against Wilson & Company, alleging that the acts specified in the original complaint had been performed by Wilson who had hired the clown and that any wrongful acts allegedly committed by Kruzel "were passive acts only and not active."
 
 
 13
 Kruzel's third-party complaint was dismissed on motion, and the dismissal was affirmed by the Appellate Court. The Illinois Supreme Court, in an opinion by Justice Schaefer, also affirmed, stating:
 
 
 14
 "We recognize that the policy of section 25(2) [permitting third-party pleadings] can be frustrated by a rigid and formal approach to the pleadings; nevertheless, a third-party complaint must disclose some relationship upon which a duty to indemnify may be predicated. To establish such a relationship between Wilson and himself, Kruzel, in his statement of facts in this court, augments the allegations of his pleadings by adopting the view of the trial judge that the clown was acting for the benefit of both Kruzel and Wilson, and was present to induce customers to come into Kruzel's store. If those facts had been alleged by Kruzel it would be possible to discern potential relationships that would support a duty on the part of Wilson to indemnify Kruzel.
 
 
 15
 "But no such facts were alleged, and, as the appellate court pointed out, the 'amended third party complaint demonstrates no relationship or circumstance' that would give rise to a duty to indemnify. Kruzel's effort appears to have been to divorce himself completely from any connection with Wilson. His pleadings do not admit that he sold a product distributed by Wilson. . . . [His] . . . allegation [that his acts were merely "passive" but that Wilson's wrongful acts were "active"] asserts only the pleader's conclusion as to legal characterizations, without any facts to support that conclusion." 39 Ill.2d at 231, 234 N.E.2d at 793.
 
 
 16
 Thus, the Illinois Supreme Court has declared that the bare assertion of the passive nature of one's negligence is inadequate; one must allege supportive facts. Further, a pleader must allege facts so that "it would be possible to discern potential relationships that would support a duty on the part of" a third-party defendant to indemnify the third-party plaintiff.
 
 
 17
 This latter point causes the knotty interpretative problems to which we adverted earlier. From the court's use of the phrase "possible to discern potential relationships," we may infer that a limited degree of lack of specificity in the pleadings is not fatal. The court intimated that Kruzel could have stated a cause of action if he had but made the proper allegations. This suggests that the interpretation of Muhlbauer offered by the Hospital and Thonney is too sweeping; the court could have, but did not, state that only relationships such as those created by the respondeat superior doctrine and by statutes such as the Structural Work Act would sustain an implied indemnity claim. Therefore, while we agree with the third-party defendants that the court obviously was wary of the implications of the Reynolds-Sargent decisions-though it did not explicitly disapprove those cases-we are unsure what it proposed as an alternative. We note that one Illinois practitioner apparently reads Muhlbauer as not rejecting Reynolds and Sargent:
 
 
 18
 "What such a required 'relationship' must be is not explained in the opinion. However, logic and reason [seem] to suggest that such a relationship if properly pleaded (which was not the case in Muhlbauer) possibly might be nothing more than the involvement of the two parties (third party plaintiff and third party defendant) in the causation of injury to the plaintiff under circumstances that clearly indicated a clear distinction in the quality of their misconduct." Kissel, Theories of Indemnity as Related to Third Party Practice, 54 Chicago Bar Record 157, 160 (1973).
 
 
 19
 Great Lakes in its Count I, as apparently did third-party plaintiff Kruzel in Muhlbauer, purported to relieve itself of any causation relationship with the accident. Count II, however, would be consistent with a joint causation relationship with the active-passive differentiation being brought into play.
 
 Application of the Relevant Law
 
 20
 Our reading of Count II persuades us that we would not be justified in holding as a matter of law either that Great Lakes was "actively" negligent or that it was equally as culpable as the third-party defendants. Either of those conclusions would defeat Great Lakes's claim. The fact that its truck was moving does not, by itself, establish that Great Lakes was an "active" tortfeasor. "[M]ere motion does not define the distinction between active and passive negligence." Trzos v. Berman Leasing Co., 86 Ill.App.2d 176, 183, 229 N.E.2d 787, 791 (1967). See also Gulf, Mobile & Ohio R. Co. v. Arthur Dixon Transfer Co., 343 Ill.App. 148, 157-158, 98 N.E.2d 783, 788 (1951). Because the question is close, we think that it would be preferable to determine the relative degrees of fault of the parties on the basis of evidence at a trial rather than on the pleadings alone at the motion-to-dismiss stage. See generally the discussion in Trzos, supra, 86 Ill.App.2d at 182, 229 N.E.2d at 791. The recent Carver v. Grossman decision, supra, strongly supports our decision.[4]
 
 
 21
 The principal obstruent factor to Great Lakes's successful route to a trial on the merits is found in the abbreviated nature of Count II of its third-party complaint, essaying as it does not far beyond the status of being conclusionary. We have already indicated that taken by itself Count I, although denominated as a part of the third-party complaint, actually amounts only to an affirmative defense to the main action. While pleaders apparently are frequently, and unnecessarily, afraid that they somehow will concede some aspect of their case, it would seem clear that a third-party plaintiff by definition has "to be negligent in some degree at least." Kissel, supra at 157.
 
 
 22
 On the other hand, we are not unmindful that a complaint should not be dismissed merely because its allegations do not support the legal theory on which the pleader intends to proceed. 5 Wright & Miller, n. 1 supra, Sec. 1357, at 602. Here, apparently the parties as well as the district court were looking at both counts when they discussed the question of sufficiency.
 
 
 23
 That the district court did do so is consistent with the liberal policy regarding amendment when a motion to dismiss is involved. "A dismissal under Rule 12(b)(6) generally is not on the merits and the court normally will give plaintiff leave to file an amended complaint. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that plaintiff be given every opportunity to cure a formal defect in his pleading." Wright & Miller, supra, Sec. 1357, at 611-12. Although it is not indicated that Great Lakes was afforded an opportunity to amend, the manner in which the district court considered the specific charges of active negligent conduct on the part of the Hospital and Thonney as alleged in Count I would seem to obviate any problem in this respect.
 
 
 24
 The district court had no difficulty finding an alleged basis for possible proof of active negligence on the part of Wesley Memorial and Thonney. Likewise, the court determined, with Muhlbauer in mind, that there was a requisite relationship between the parties, stating:
 
 
 25
 "The gravamen of the allegations of the third party complaint is that Wesley through Thonney negligently directed and supervised the agent of Great Lakes in backing up and joining the Great Lakes truck with the Wesley truck, thereby causing the fatal injury. The complaint further alleges that Wesley through Thonney negligently called to and directed plaintiff's intestate to come to and stand in a place of danger. These factual allegations sufficiently develop the necessary relationship upon which indemnity may lie." [Emphasis added.]
 
 
 26
 Having gotten Great Lakes over the "relationship" hurdle, the district court then found against it because its driver had actually been backing the truck, that is, his hands had been the ones "on the steering wheel." But, as we have pointed out, motion per se is insufficient to deprive a pleader of passive or secondary status. On the basis of the allegations of direction, supervision, and control and the indicia of active negligence on the part of the Hospital and Thonney alleged in Count I which the district court could[5] and did consider, we are unable to say that Wesley through Thonney had not so completely preempted the matter of exercising due care toward Parr as to relegate the negligence of the Great Lakes driver to a secondary status.
 
 
 27
 The district court stated that Great Lakes had no right to rely entirely on Thonney's assistance. However, we are not now concerned with whether the Great Lakes driver was relieved of all duty of due care but merely with whether Wesley Memorial's supervision and control over all activities at the accident site was sufficient for us to conclude beyond a doubt that no set of facts with regard to that supervision and control could be proved in support of the claim that the driver's negligence was only secondary and passive. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).
 
 
 28
 Applying the test of whether, in the light most favorable to Great Lakes and with every doubt resolved in its behalf, the third-party complaint states any valid claim for relief, Wright & Miller, supra, Sec. 1357, at 601, we are unable to say that it does not.
 
 
 29
 For the reasons hereinbefore set out, we reverse the dismissal and remand the cause for further proceedings consistent with this opinion. The matter not being before us, we express no opinion, however, on the extent of damages in the event Great Lakes should prove its claim. See Kissel, supra, at 157, 163.
 
 
 30
 Reversed and remanded.
 
 
 
 [1]
 5 Wright & Miller, Federal Practice and Procedure: Civil Sec. 1343 (1969)
 
 
 [2]
 Prosser asserts that the same "specious" argument that supports the prohibition of contribution between joint tortfeasors logically also applies to indemnity cases. Prosser On Torts Sec. 51, at 311 (4th ed. 1971). See also Judge Dempsey's frank and vigorous criticism of Illinois indemnity law in Sargent v. Interstate Bakeries, Inc., 86 Ill.App.2d 187, 197-198, 201-202, 229 N.E.2d 769, 774-775, 776-777 (1967)
 
 
 [3]
 See Kissel, Theories of Indemnity as Related to Third Party Practice, 54 Chicago Bar Record 157, 158-59 (1973)
 
 
 [4]
 It is possible that the Illinois Supreme Court's decision in Carver will not even touch on the active-passive negligence aspect of that case. The important controversy seems to be the losing party's charge that there was clear collusion and fraud by the original plaintiff and the winning third-party plaintiff
 
 
 [5]
 "In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although . . . items appearing in the record of the case . . . may be taken into account." 5 Wright & Miller, supra, Sec. 1357, at 593