BANK OF NORTH CAROLINA, N.A., Plaintiff-Appellant,

v.

The ROCK ISLAND BANK, an Illinois Corporation, Defendant-Appellee.

No. 76–1984.

United States Court of Appeals, Seventh Circuit.

Argued April 14, 1977.

Decided Feb. 1, 1978.

Rehearing and Rehearing In Banc Denied March 10, 1978.

---

Robert J. Noe, Moline, Ill., for plaintiff-appellant.

Robert A. Helman, Chicago, Ill., Peter H. Lousberg, Rock Island, Ill., for defendant-appellee.

Before SWYGERT and BAUER, Circuit Judges, and JAMESON, Senior District Judge.[1]

1. The Honorable William J. Jameson, United States District Judge for the District of Montana, is sitting by designation.

SWYGERT, Circuit Judge.[2]

In this appeal we must determine whether an instrument executed by an Illinois-chartered bank is a letter of credit. If it is, and if it is proper in Illinois for a state bank to issue such a letter, we must reverse the district court's dismissal of the complaint for failure to state a claim.

The facts of this case are relatively simple. As this action is an appeal from a motion to dismiss, we are obliged to treat all of the factual allegations in the complaint as true. *Parr v. Great Lakes Express Co.*, 484 F.2d 767, 769–70 (7th Cir. 1973). On June 5, 1969 William H. Kearney, then president of defendant Rock Island Bank, executed the following instrument to Lorraine Realty Company on the bank's letterhead:

Lorraine Realty Corporation
748 South Mississippi Boulevard
St. Paul, Minnesota 55116

Gentlemen:

We hereby issue to Lorraine Realty Corporation, 748 South Mississippi Boulevard, St. Paul, Minnesota, our irrevocable and unconditional commitment to purchase your Promissory Note of this date in the amount of $400,000.00, said Promissory Note to bear a maturity date of June 5, 1971.

We will purchase said Promissory Note from its holder in due course at maturity, provided the holder of such Promissory Note shall give us at least 60 days written notice of its intent to sell to us prior to delivery date, said delivery date not to be prior to maturity date of June 5, 1971.

We hereby agree with the drawers, endorsers, and bona fide holders that this credit will be duly honored on presentation in an amount not to exceed unpaid balance of principal and interest due upon presentation.

Very truly yours,

/s/ William H. Kearney
William H. Kearney
President

Attested:
/s/ B.T. Olson
B.T. Olson, Cashier

On the same day that this letter was drafted Lorraine gave a promissory note in the amount of $400,000 to the Sumner Financial Corporation. Shortly thereafter, the Bank of North Carolina purchased the note from Sumner. The Bank of North Carolina, in compliance with all the terms of the letter, tendered the note at its maturity to the Bank of Rock Island for payment. The Bank of Rock Island refused to purchase the note.

On March 31, 1976 the Bank of North Carolina filed this diversity action against the Bank of Rock Island for the latter's refusal to honor the promissory note. North Carolina, alleging that it is a holder in due course, claims that the Bank of Rock Island was obligated to purchase the note because the instrument in question is a valid letter of credit. The district court found the letter to be a contract of guaranty and not a letter of credit. As a result, the court held the instrument facially void and unenforceable and, upon motion of the defendant, dismissed the complaint for failure to state a claim.

On appeal the Bank of North Carolina reasserts its contention that the instrument is a valid letter of credit and, as such, is enforceable regardless of whether it may function as a guaranty. For the reasons noted below, we agree with North Carolina and therefore reverse the order dismissing the complaint.

I

In holding Rock Island's letter to be a guaranty and therefore void and unenforceable, the district court relied on several decisions of the Illinois Supreme Court.

**2.** The writing of the court's opinion was originally assigned to Judge Bauer. Because Judge Jameson and I could not agree with that part of Judge Bauer's draft which encompasses the substance of his dissent, the writing of the court's opinion was reassigned. In drafting this opinion, I substantially adopted Judge Bauer's draft with respect to Parts I and II. That adoption made my task easier. Moreover, "credit should be given to whom it is due."

*People v. First State Bank & Trust Co.*, 364 Ill. 294, 4 N.E.2d 385 (1936); *Hoffman v. Sears Community State Bank*, 356 Ill. 598, 191 N.E. 280 (1934); *Knass v. Madison & Kedzie State Bank*, 354 Ill. 554, 188 N.E. 836 (1933). In these cases agreements by Illinois banks to repurchase bonds and securities at their face value were deemed to be guaranties and, as such, were held to constitute *ultra vires* acts by state-chartered banks. The holdings of these cases were based on policy considerations of protecting bank depositors and stockholders and on a statute prohibiting state banks from guarantying the debt of another.[3] Finding that the Rock Island letter was functionally indistinguishable from the repurchase agreements struck down in *First State Bank, Hoffman*, and *Knass*, the district court ruled that the letter was an unenforceable guaranty rather than a letter of credit.

The Bank of North Carolina reasserts on appeal its contention that these cases are no longer controlling because of the repeal of the statute which prohibited Illinois banks from guarantying the debt of another and because of a 1965 amendment to the Illinois Banking Act which authorizes Illinois banks to issue letters of credit.[4] North Carolina argues that as long as Rock Island's instrument falls within the definition of a letter of credit under the Illinois Commercial Code,[5] it must be deemed a valid obligation even though it might functionally secure the debt of another.

**3.** Section 4 of the 1879 Act for the protection of bank depositors provided:

> It shall not be lawful for any savings bank, individual or individuals doing banking business, banking company, or incorporated bank receiving savings deposit, or deposits of trust funds, to assume the payment of, or to become liable for, or to guarantee to pay the principal of, or interest on, any bonds, notes or other evidence of indebtedness of, for, or on account of any person or persons, company or incorporation; and in any assumption, liability or guarantee, whereby such deposits or trust funds could be jeopardized or impaired shall be null and void.

This Section was repealed on January 1, 1962.

**4.** The 1965 amendment to the Illinois Banking Act, which became effective January 1, 1967, provides in pertinent part:

Rock Island maintains that *First State Bank, Hoffman*, and *Knass* remain controlling despite the subsequent statutory changes. According to Rock Island the holding of these cases was predicated less on the existence of the statute prohibiting Illinois banks from guarantying the debt of another than on the fact that guaranties are

> contracts not within the powers conferred on banks and . . . so jeopardize the safety of bank deposits [so] as to result in its failure, tend to produce widespread injury to the public and may properly be held void though there be no specific statutory prohibition against them. *Knass, supra*, 354 Ill. at 567, 188 N.E. at 842.

This public policy remains viable, Rock Island argues, despite the repeal of the statute prohibiting banks from issuing guaranties. It says that we must therefore construe the amendment to the Illinois Banking Act authorizing issuance of letters of credit in a manner that is not inconsistent with that policy. Inasmuch as its instrument is no less a guaranty than the repurchase agreements struck down in *First State Bank, Hoffman*, and *Knass*, Rock Island contends that even though the instrument might fall within the liberal definition of a letter of credit under the Illinois Commercial Code, it nevertheless cannot be the type of letter of credit that the legislature intended to empower Illinois banks to issue. We disagree.

> A bank organized under this Act . . . shall . . . have . . . the following additional general corporate powers:
>
> *   *   *   *   *   *
>
> (13) . . . to issue, advise or confirm letters of credit authorizing the holders thereof to draw drafts upon it or its correspondents. Ill.Rev.Stat. ch. 16½, § 105(13).

The Act does not specifically define letters of credit.

**5.** The Illinois General Assembly adopted Article 5 of the Uniform Commercial Code in 1961 which contained provisions with respect to letters of credit. Ill.Rev.Stat. ch. 26, § 5. This Act became effective on July 1, 1962, six months prior to the repeal of the statute prohibiting state banks from guarantying the debts of another. *See* note 3 *supra*.

## II

■ We cannot accept Rock Island's invitation to construe the amendment to the Illinois Banking Act authorizing issuance of letters of credit so as to prohibit Illinois banks from issuing letters of credit that guarantee the debt of another. As every letter of credit serves, in one sense or another, as a guaranty,[6] it makes little sense to deny enforcement of a letter of credit as *ultra vires* simply because it serves a guaranty function.[7] More important, the statute on its face does not admit of any distinction between letters of credit that function as guaranties and those that do not, and a commitment to honor a draft upon presentation of a promissory note is no less a letter of credit than a commitment to honor a draft upon presentation of documents of title to goods.[8]

Nor do we believe that policy considerations dictate the construction urged by Rock Island. As the Illinois Supreme Court observed in *Knass,* the public policy of the State of Illinois is principally to be found in its constitution and statutory enactments. 354 Ill. at 567, 188 N.E. at 842. Now that the statute prohibiting Illinois banks from guarantying the debt of another has been repealed, no constitutional or statutory provision exists declarative of a public policy against the issuance of guaranties by Illinois banks. There is no need to torture the plain language of the Illinois Banking Act to harmonize it with any apparently inconsistent preexisting statutory policy. Moreover, to the extent that *First State Bank, Hoffman,* and *Knass* themselves embody an anti-guaranty policy, we cannot agree that it is applicable to letters of credit expressly authorized by the Illinois Banking Act. As such contracts are now within the powers of Illinois banks, they cannot be void.

In short, we agree with the Bank of North Carolina that by amending the Illinois Banking Act the General Assembly must have had in mind letters of credit as

---

**6.** *Beathard v. Chicago Football Club, Inc.,* 419 F.Supp. 1133, 1137 (N.D.Ill.1976); *National Surety Co. v. Midland Bank & Trust Co.,* 408 F.Supp. 684, 692 (D.N.J.1976), *rev'd on other grounds,* 551 F.2d 21 (3d Cir. 1977); Harfield, *Code Treatment of Letters of Credit,* 48 Corn. L.Q. 92, 93 (1962).

**7.** Indeed, the essential distinction between the letter of credit and the contract of guaranty is purely formal, not functional. Like the contract of guaranty, the letter of credit may be so designed as to secure the performance of another contractual obligation. Not surprisingly, such credits are called "guaranty" letters of credit. *E. g.,* Verkuil, *Bank Solvency and Guaranty Letters of Credit,* 25 Stan.L.Rev. 716, 721–24 (1973); Note, *Guaranty Letters of Credit: Problems and Possibilities,* 16 Ariz.L.Rev. 822 (1974). Unlike the true contract of guaranty, however, the guaranty letter of credit will oblige its issuer to pay on the presentation of specified documents showing a default, rather than upon proof of the fact of default. Armstrong, *The Letter of Credit as a Lending Device in a Tight Money Market,* 22 Bus.Law. 1105, 1107–08 (1967); Harfield, *Letters of Credit and Documentary Drafts,* 1 U.C.C.L.J. 205, 209–10, 217 (1969). The central distinction between the two instruments, thus, is that the letter of credit creates a primary liability on an original obligation—to pay on the presentation of documents—whereas the contract of guaranty creates a secondary liability on the pre-existing obligation of another—to pay in the event that the other does not. *Barclays Bank D.C.O. v. Mercantile National Bank,* 481 F.2d 1224, 1236 (5th Cir. 1973), *cert. denied,* 414 U.S. 1139, 94 S.Ct. 888, 39 L.Ed.2d 96 (1974); *Border National Bank v. American National Bank,* 282 F. 73 (5th Cir.), *cert. denied,* 260 U.S. 701, 43 S.Ct. 96, 67 L.Ed. 471 (1922).

Accordingly, where a letter of credit has required payment upon the presentation of specified documents, it has consistently been held to create a valid obligation rather than an *ultra vires* guaranty, even though it functionally secured the contractual obligation of another. *E. g., Barclays Bank D.C.O. v. Mercantile Nat'l Bank, supra; Border National Bank v. American National Bank, supra; Prudential Ins. Co. v. Marquette Nat'l Bank,* 419 F.Supp. 734, 735 (D.Minn.1976); *American Empire Ins. Co. v. Hanover Nat'l Bank,* 409 F.Supp. 459, 463–64 (M.D.Pa.1976), *aff'd,* 556 F.2d 564 (3d Cir. 1977). Where the purported letter of credit required its issuer to do more than deal in documents, however, it has been deemed an unlawful guaranty. *Wichita Eagle & Beacon Pub. Co. v. Pacific Nat'l Bank,* 493 F.2d 1285, 1286 (9th Cir. 1974).

**8.** Harfield, *Code, Customs & Conscience in Letter-of-Credit Law,* 4 U.C.C.L.J. 7, 9 (1972); *accord,* Harfield, *The Increasing Domestic Use of the Letter of Credit,* 4 U.C.C.L.J. 251, 253–54 (1972); Verkuil, *supra* note 7, at 721–24.

defined in the previously enacted Illinois Commercial Code.[9] We also agree that the outcome of this appeal turns simply on whether Rock Island's instrument is a letter of credit within the meaning of the Illinois Commercial Code. If it is, the Illinois Banking Act authorized Rock Island to issue it and the complaint here states a cause of action.

### III

Article 5 of the Uniform Commercial Code as adopted in Illinois defines a letter of credit as

> an engagement by a bank or other person made at the request of a customer and of a kind within the scope of this Article (Section 5–102) that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit. Ill.Rev.Stat. ch. 26, § 5–103(1)(a).

A letter of credit issued by a bank falls within the scope of the Article if it "requires a documentary draft or a documentary demand for payment,"[10] or if it otherwise "conspicuously states that it is a letter of credit or is conspicuously so entitled." Sections 5–102(1)(a), (c). Moreover, it seems clear that a guaranty can be a letter of credit (or vice versa) for the Code's drafters deemed unnecessary to expressly exclude guaranties from the scope of Article 5 "*[u]nless* the engagement meets the requirements [specified above]." Section 5–102(2) (emphasis added). As long as the credit is in writing and is signed by the issuer, "no particular form is required," section 5–104(1), and no consideration is necessary to support issuance of the credit. Section 5–105.

In construing the nature and terms of a letter of credit, the same general principles apply which govern other written contracts. *Venizelos, S. A. v. Chase Manhattan Bank*, 425 F.2d 461, 465–66 (2d Cir. 1970). A construction that will sustain an instrument will be preferred to one that will defeat it. *Schiro v. W. E. Gould & Co.*, 18 Ill.2d 538, 543, 165 N.E.2d 286, 289 (1960). Where a contract is fairly susceptible of two constructions, one which makes it fair and customary and which prudent persons would naturally enter into, while the other makes it inequitable, the former interpretation must be preferred to the latter. *Camp v. Hollis*, 332 Ill.App. 60, 68, 74 N.E.2d 31, 35 (1947). An ambiguous contract will be construed most strongly against the party who prepared the contract. *Herbert Shaffer Associates, Inc. v. First Bank of Oak Park*, 30 Ill.App.3d 647, 653, 332 N.E.2d 703, 708 (1975).

With the above principles in mind, we turn to the question whether the instrument issued by the Bank of Rock Island is a letter of credit. Since the letter in question does not "conspicuously state that it is a letter of credit," our answer depends upon whether the letter "requires a documentary draft or a documentary demand for payment." Section 5–102(1)(a).

A "documentary draft" or "documentary demand for payment" is one the "honor of which is conditioned upon the presentation of a document or documents." The term "document" is defined expansively to mean "any paper including document of title, se-

---

**9.** Certainly canons of statutory construction support reference to the Illinois Commercial Code for a definition of a commercial instrument mentioned but undefined in the Illinois Banking Act. E. g., *Illinois-Indiana Cable Television v. Illinois Commerce Commission*, 55 Ill.2d 205, 302 N.E.2d 334, 342 (1973).

**10.** There is a seeming disparity between the Illinois Banking Act which allows banks to issue "letters of credit authorizing the holders thereof to draw drafts on it or its correspon-

dents," and Article 5 of the Commercial Code which permits banks to honor "drafts or other demands for payment." We believe that the Illinois legislature in amending the Banking Act must have had in mind "letters of credit" as defined in the previously enacted Illinois Commercial Code. Since the Code, which also applies to banks, specifically provides for "other demands" as well as drafts, we conclude that the more complete definition of the Code prevails.

curity, invoice, certificate, notice of default and the like." Section 5–103(1)(b).

We believe the letter here fulfills the requirement of a "documentary demand for payment." The Bank of Rock Island agreed in its instrument "that this credit will be duly honored on *presentation* [of a document, *i. e.*, the promissory note] in an amount not to exceed unpaid balance and interest due upon *presentation*." (Emphasis added.) The letter's requirement of presentation of the note serves to show the bank that the party demanding payment has the right to payment and ensures the bank that it will not be subject to further liability to someone else on the same letter.

We also believe the letter is a letter of credit within the definition and scope of the Illinois Commercial Code and the Illinois Banking Act. It is "an engagement by a bank . . . made at the request of a customer . . . that the issuer [Rock Island Bank] will honor . . . demands for payment upon compliance with the conditions specified in the credit." Section 5–103(1)(a). Accordingly, the district court's order dismissing the complaint is reversed and the case is remanded for further proceedings consistent with this opinion.

BAUER, Circuit Judge, dissenting.

Although I freely concede that this case is a difficult one and that I agree with much the Court has to say, I must dissent from the Court's judgment for the reasons noted below.

I agree with the Court that the mere fact that a letter of credit serves a guaranty function does not necessarily render it an ultra vires instrument under Illinois law for the Illinois Banking Act now authorizes state banks to issue certain types of letters of credit and, as the Court observes, every letter of credit is in one sense or another a "guaranty." Moreover, I agree that, absent a definition of "letters of credit" in the Illinois Banking Act, the definition thereof contained in the Illinois Commercial Code governs the legal characterization of Rock Island's instrument.

I part company with the Court's judgment, however, for two reasons. First, Illinois banks draw their authority to issue letters of credit from the Illinois Banking Act and not the Illinois Commercial Code. Accordingly, even assuming that Rock Island's instrument meets the definition of a "letter of credit" under the Code, it remains an ultra vires obligation unless it is a "letters of credit authorizing the holders thereof to draw drafts upon [the issuer] or its correspondents" within the meaning of the Illinois Banking Act, Ill.Stat.Ann. ch. 16½, § 105(13) (Smith Hurd Cum.Supp.1975). I would not lightly assume, as the Court does, that the language quoted above was not intended to restrict the *types* of letters of credit an Illinois bank may issue. Certainly the legislature must have been aware when it enacted this amendment to the Banking Act that the definition of a "letter of credit" contained in the existing Commercial Code encompassed a wider range of instruments than those authorizing their holders to draw "drafts" upon their issuers. If that assumption is a valid one, it is reasonable to assume further that the legislature may well have had strong policy reasons for restricting the types of letters of credit issuable by Illinois banks to those that authorize their holders to draw "drafts" upon their issuers. I would not treat that limiting language as superfluous, as does the Court, but would rather construe it restrictively, in accordance with the rule that the Illinois Banking Act should be strictly construed so as to confine the activities of Illinois banks within the limits expressly authorized by the legislature. *State Bank of Blue Island v. Benzing*, 383 Ill. 40, 48 N.E.2d 333, 339 (1943); *Knass v. Madison & Kedzie State Bank*, 354 Ill. 554, 561, 188 N.E. 836 (1933), *appeal dismissed*, 292 U.S. 599, 54 S.Ct. 632, 78 L.Ed. 1463 (1934). Having done so, I would hold that the issuance of Rock Island's instrument was not authorized by the Illinois Banking Act because, even if it is a "letter of credit" under the Commercial Code, it is not one authorizing its holder to draw "drafts" upon its

issuer. Whatever else it is, the mere presentation of the promissory note required by Rock Island's instrument is not a "draft" within the meaning of the Commercial Code.[1]

Secondly, I disagree with the Court's conclusion that Rock Island's instrument falls within even the liberal definition of a "letter of credit" contained in the Commercial Code. What troubles me at the outset is that the issuer is unable to determine the extent of its liability under its instrument without going outside the documents required as a condition of the honor of the instrument. The letter commits the issuer to honor presentation of a promissory note "in an amount not to exceed unpaid balance of principal and interest due on presentation." Unfortunately, that amount is not ascertainable from the face of the note alone, and no other "document" is required by the letter to affirmatively settle what the "unpaid balance of principal and interest" is. Accordingly, because the issuing bank cannot ascertain the extent of its liability under the letter by relying on the required documents alone and must ascertain facts extrinsic to the documents in which it is dealing, this instrument cannot be deemed a "letter of credit," at least in its normative commercial sense. E. g., *Wichita Eagle & Beacon Pub. Co. v. Pacific Nat'l Bank*, 493 F.2d 1285, 1286 (9th Cir. 1974). Moreover, I am disturbed by the Court's conclusion that the mere act of presenting the promissory note constitutes a "documentary demand for payment" bringing this instrument within Article 5. Ill.Stat. Ann. ch. 26, § 5–102(1)(a). This is certainly not the basis upon which the Bank of North

Carolina argued that Rock Island's instrument fell within Article 5.[2] In any event, a "documentary demand for payment" is "one [the] honor of which is conditioned upon the presentation of a document or documents." Ill.Stat.Ann. ch. 26, § 5–103(1)(b). Concededly, the promissory note is a "document." *Id.* However, it seems to me that the act of presenting the promissory note cannot be both a "demand for payment" and a condition of the honor of the demand at one and the same time. Like the requirement that the holder of the note give notice of intent to sell prior to tendering the note itself, the act of presenting the note is merely a condition precedent to the bank's duty to purchase the note. It is not, in my opinion, a "documentary demand for payment" whose honor is conditioned upon itself. If I am wrong about that and the Court is right, then there is nothing to prevent a letter from a bank ordering typing paper from being deemed a "letter of credit" if the letter conditions payment for the paper upon its delivery. If one accepts the Court's view of what a "documentary demand for payment" is, then the act of delivering the paper would constitute a "documentary demand for payment," for the paper is a "document or documents" by virtue of the fact that it is paper, and the act of delivery or tender constitutes a "demand for payment." The letter becomes a letter of credit because it is

> "an engagement by a bank or other person made at the request of a customer[3] and of a kind within the scope of this Article[4] . . . that the issuer will honor drafts or other demands for payment upon compliance with the condi-

**1.** Nor, as the Bank of North Carolina argues, is the notice of intent to sell a "draft." By definition, a notice of *intent* cannot be an unconditional *order* to pay. See Ill.Stat.Ann. ch. 26, §§ 3–102(1)(b), 3–104(2)(a); cf. *Bounty Trading Corp. v. S.E.K. Sportswear, Ltd.*, 48 A.D.2d 811, 370 N.Y.S.2d 4 (1st Dept. 1975).

**2.** The Bank contended that the notice of intent to sell required by Rock Island's letter was a "draft," that the promissory note was a "document," and thus that the two together were a

"documentary draft" required as a condition of honoring the letter. But see note 1 *supra*.

**3.** A "customer" is simply a "person who causes an issuer to issue a credit." Ill.Stat.Ann. ch. 26, § 5–103(g). That could simply be the salesman who procures or solicits the bank's order.

**4.** The letter falls within the scope of Article 5 because it requires a "documentary demand for payment." Ill.Stat.Ann. ch. 26, § 5–102(1)(a).

tions specified in the credit." Ill.Stat. Ann. ch. 26, § 5–103(1)(a).

Maybe no harm will befall banks whose orders of typing paper are deemed "letters of credit," but I doubt that the draftsmen of the Code had any such instruments in mind when they defined letters of credit.

Perhaps even more troubling than the Court's substantive result is the manner in which the Court arrived at it. The Court is reversing a district court judgment on the basis of an argument presented neither below nor on appeal, and that is an unusual practice for this Court. *Desert Palace, Inc. v. Salesburg*, 401 F.2d 320, 324 (7th Cir. 1968). Perhaps the Court is straining to do what it perceives as equity. If so, it does so in an inequitable manner, for I have no doubt that the Bank of Rock Island will be surprised to learn that it has been deprived of a judgment won below on the basis of a ground that it has never had an opportunity to address.

I respectfully dissent. I would characterize Rock Island's instrument as simply a contract to purchase a promissory note containing express conditions precedent, and not as a letter of credit. As such, the instrument is an ultra vires obligation under the controlling authority of *Knass v. Madison State Bank*, 354 Ill. 554, 188 N.E. 836 (1933). Moreover, the Illinois Banking Act, as amended, does not authorize Rock Island to issue this instrument, even if it is a letter of credit as defined in the Illinois Commercial Code. Accordingly, I would affirm the district court's judgment.